[No. 358. Decided January 27, 1892.]

FRANK LEWIS, *Appellant*, v. A. M. SIMPSON, *Respondent*.

3   641
f22  318

MASTER AND SERVANT—INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.

In an action for damages for personal injuries the proof showed that plaintiff had been employed in a sawmill for more than a year, engaged in taking away lumber from the pony saw; that for the purpose of removing sawdust he went below to adjust a belt upon an elevator used for that purpose; that in order to place the belt on the elevator pulley it was necessary to get on the opposite side of the shaft which operated the belt, and then he must return to put it upon the pulley of the shaft; that the shaft was about two feet above the lower floor and plaintiff crawled under it in performing this service, as was his usual practice, and after placing the

41—3 WASH.

belt on the elevator pulley, he sought to return by walking on a beam which supported one end of the shaft; that the shaft was revolving rapidly at the time, and there was a set screw at that end projecting about an inch beyond the collar; that the shaft, with collar and screw, was less than a foot high above the beam, and did not extend along the beam more than a foot; that in stepping across the shaft, plaintiff's overalls caught in the screw and one of his legs was broken. *Held,* That plaintiff was guilty of contributory negligence, and his action was properly non-suited.

Appeal from Superior Court, Pacific County.

The facts are fully stated in the opinion.

*Watson, Hume & Watson,* for appellant.
*Wm. H. Brinker,* and *Fulton Bros.,* for respondent.

The opinion of the court was delivered by

Scott, J.—The appellant brought this action to recover damages for personal injuries received by him while at work in a sawmill alleged to belong to the respondent. At the trial in the superior court the plaintiff was non-suited on the grounds that his evidence showed the injuries he had received were due in part at least to his own negligence, and because his evidence failed to show the defendant's ownership of the mill.

The first ground only will be examined. It appears that appellant had been at work at the mill aforesaid for some sixteen years. The last year he was engaged in taking away lumber from the pony saw, or "off-bearing," as it is sometimes called. Just previous to getting hurt, he had been clearing the track by shoveling away the sawdust. There was an elevator to remove this sawdust, which at the time was not running, and the plaintiff went below to adjust the belt thereon, and set the same in motion. To do this it was necessary to get on the opposite side of the shaft which operated the belt; for the purpose of placing the belt on the wooden pulley of the elevator, and then

to return and put it upon the iron pulley of the shaft. This shaft was about two feet above the lower floor, and the plaintiff, in performing this service, usually crawled under it to get at the other side, as he says it was too high for him to step over conveniently. Upon the occasion in question he did crawl under it in going, but after placing the belt on the elevator pulley, he sought to return by going to a beam only a step or two distant, upon which one end of the shaft was supported, and by walking along this beam and stepping over the end of the shaft, get across it in this manner. He testified that he had walked over it this way a good many times. The shaft was revolving rapidly at the time, and there was a set screw in this end of it which projected about an inch beyond the collar. It was not necessary to take either a high or a long step to get over, as it, with the collar and set screw, was less than a foot high above the beam, and did not extend along it more than a foot. The place was not well lighted, and the plaintiff claims that the steam was escaping and blinded him some. Anyhow, in stepping over the shaft, the set screw caught in the plaintiff's overalls, and in some manner broke one of his legs in three places.

This belt was usually left in position to run the elevator and was only taken off occasionally when repairs were to be made or for some special purpose, and it seemed to be no one's business in particular to replace it. The plaintiff testified that most anybody put it on. That it would remain on for a week or a month at a time, and sometimes it would have to be adjusted two or three times in a day if something broke. That whenever it was off and he wanted to use the elevator he would go down to fix it, and that he had seen other workmen walk along this beam when they went there. He claimed, however, that placing this belt on was no part of the work that had been assigned to him to do when he was placed at work at the pony saw,

but that he did it in consequence of the foreman having told him to "give a hand whenever it needs help and had to be done." It was not claimed that this direction had reference to any particular service, but that it was only in the nature of a general instruction to the effect that the plaintiff was expected to lend a hand wherever needed when not engaged at the pony saw. The appellant did not say when this instruction was given him, but the respondent claims the reasonable inference to be drawn from his testimony is that it was given to him when he was placed at work at the pony saw, and that it was a part of his regular duties. However this may be, we are of the opinion that this general direction was not sufficient to establish any different rule of liability in performing this particular service from that which ordinarily obtains between master and servant. It was hardly sufficient in itself to impose upon him the duty of performing any new or more than ordinarily dangerous service, if there was any greater degree of danger attached to this than that appertaining generally to other employments about the mill, or of requiring him to perform services that he was not qualified to perform. Nor is it apparent that he so understood it, or that he considered there was any especial or unusual danger connected with this matter. This direction was not an explicit one in any sense; it rather left the manner of complying with it to the appellant's own discretion. It did not allude to this especial service even in a general way by any mention of it, and it is not claimed that he received any specific direction to perform this service at the time in question or at all. We are strongly inclined to think, under the circumstances which he himself shows, that, electing to perform it, it must be considered as a part of his general employment or duties. But it is not necessary to determine this, for there is no evidence of negligence upon the part of the respondent. It was not claimed that the machinery was defective or that

this part of it was not such as was in common use, and there was nothing to show that it was particularly dangerous, or that anyone had been injured by it before. Furthermore, if there were any negligence on the part of the respondent in this respect, the appellant could not escape the charge of contributory negligence. This part of the machinery had been in use there for some five or six years. He was well acquainted with it and with its location, and he was competent to know, and must have known, all the danger connected with it. He had been about it a great many times, the same as the other workmen. It was not a difficult thing to get over, and it was easy to avoid. In fact there was no necessity of going near the set screw at all in adjusting the belt. The plaintiff himself says he could have come back under the shaft as well as he passed under it in going, and he says he generally did go under it, but that occasionally he walked over it along the beam. In doing so he must be held to have assumed the apparent and greater risk connected with it, and consequently, he cannot recover for the injury.

The judgment is affirmed.

ANDERS, C. J., and HOYT, STILES and DUNBAR, JJ., concur.