[No. 2656. Decided December 13, 1897.]

A. H. BOYD, *Receiver of the Bank of Auburn, Respondent*, v. WILLIAM COCHRANE *et al., Appellants.*

PROMISSORY NOTE — EXTENSION OF PAYMENT — VOID CONSIDERATION — DISCHARGE OF SURETY.

An agreement by a bank to grant the maker of a promissory note an extension of the time of payment, if he would procure a deposit of public funds by the county treasurer in the bank for a period of two months, is contrary to public policy and void,

and would not afford a valid consideration for such extension, although the contract had been fully executed.

An extension of payment granted the maker upon such an invalid agreement is not sufficient to discharge a surety, even if made without his knowledge or consent.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Affirmed.

*Preston, Carr & Gilman,* for appellants.

*H. G. Rowland,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The appellants made and executed to the respondent bank the following note:

" Auburn, Washington, Sep. 17, 1895.

" Two months after date, without grace, for value received, I promise to pay to the order of the Bank of Auburn, $1,000.00 one thousand dollars, payable at the Bank of Auburn, Washington, with interest from date at the rate of 10 per cent. per annum until paid. In case this note shall be placed in the hands of an attorney for collection I agree to pay five per cent. upon the amount then due as attorney's fees. If not paid until after suit has been commenced I agree to pay 50 dollars as attorney's fees.

" No. 2082.                              " William Cochrane.
" Due Nov. 17.                           " P. C. Hayes."

In course of time the ordinary suit was brought upon the note by the receiver of the bank. The affirmative defense pleaded in the answer sets up that one John W. Maple was the duly elected and qualified treasurer of King county; that the Bank of Auburn was a corporation duly organized, etc., was engaged in the banking business and had the right, power and authority to so engage and receive deposits of money subject to check, draft and otherwise; and that the bank had on deposit under a bond duly given under the law for the safe keeping and return of the money deposited

certain moneys of the county of King. The fourth and material allegeation of the answer is as follows:

"That prior to the 15th day of July, 1896, and on said date, and for a long time subsequent thereto, the said Bank of Auburn was generally reputed to be a solvent bank, and fully able to meet all its obligations, and to pay all demands for sums that had been deposited therein and these defendants, and each of them, believed at said times said bank to be entirely solvent. That on the 15th day of July, 1896, the said Bank of Auburn represented to the defendant William Cochrane that they were desirous of retaining the deposit that the said John W. Maple as county treasurer had placed in said bank, and that said deposit (was) of advantage to said bank and for its interest, and requested the defendant William Cochrane to secure from said John W. Maple as county treasurer such deposit, and then contracted and agreed with the said Cochrane that if he, the said Cochrane, would procure the said John W. Maple to leave the moneys at that time deposited with said bank on deposit therewith for a period of two months from said date, that the said Bank of Auburn would, in consideration thereof, give to said defendant an extension of time of six months upon the note sued on in this action. That pursuant to said agreement and arrangement, the said Cochrane did procure said Maple to so leave said money on deposit with said bank for said period of two months, and in consideration thereof and of the action of the said William Cochrane in procuring said deposit to be so left with said bank, and in consideration of the action of the said Maple (in) so leaving said money for said period, the said Bank of Auburn did extend the time of payment of the said note for six months from the 15th day of July, 1896, to-wit to the 15th day of January, 1897."

And the next allegation is

"That said contract and agreement for extension of time was made without the knowledge or consent of the defendant P. C. Hayes."

The plaintiff interposed a demurrer to this affirmative defense for the reason that it did not constitute a defense or

counterclaim to plaintiff's complaint, and also moved the
court to strike the denials of the amended answer of the
defendants for the reason that they were sham, frivolous and
irrelevant.  The demurrer and motion to strike were sup-
ported by the court, and, the defendants electing to stand
on their answer, judgment was given against Cochrane, as
principal, and Hayes, as surety.  There are some questions
of law raised by the appellant in this case that are not dis-
puted by the counsel for the respondent, and as we view the
case, there is only one real question to be decided, and that
is, whether the consideration pleaded in the answer was a
sufficient consideration to support the contract for an exten-
sion of the time of payment so as to discharge the surety
from liability upon the note.  It will be conceded, we
think, without the citation of authorities, that the contract
upon which the surety claims his discharge must be found-
ed upon a valid agreement based on a valid consideration.
Does the contract set up in the affirmative defense fall
within these requirements?  We think that it plainly does
not.  The statute especially prohibits county officers from
using any portion of the money entrusted to their care for
safe keeping in order to make a profit out of the same, and
prohibits them from using the same for any purpose not au-
thorized by law.  Such acts the statute constitutes a felony.
And this court, in several cases which have been before it,
has decided that the salary, and the salary only, was intend-
ed to be the recompense of the treasurer, and any agree-
ment which the treasurer of King county made in reference
to the public funds whereby they were to be deposited  or
used in any manner whatsoever for the benefit of himself
or of any other person was a violation of this statute.  It is
true that the law provides that the treasurer may deposit
in his name as county treasurer any moneys of the county
in any national, state or private bank doing a general bank-

ing business in his county. But the evident intention of
the law is that the treasurer shall be left untrammeled in
the exercise of his choice of banks where such deposit is
made, and that in the exercise of that choice he must look,
and look only, to the interests of the public; and in no
event is he authorized—as it is alleged that he did do by
this affirmative answer—to deposit money in banks for any
particular time. The losses which so frequently occur to
counties and other municipalities in this state are nearly al-
ways attributable to the action of the custodian of the
funds in keeping them on hand after they should have been
paid out on warrants and demands which were due; the
treasurer has no way of knowing when legal demands will
be made upon the funds within his keeping, and it is his
duty to keep them available at all times.

Rule CCLXXIX in Greenhood on Public Policy is as
follows:

" Any contract by which public office is to be used for
private gain is void."

And this rule is well sustained by the authorities. The
question, of course, is whether this case falls within the
rule. Under this rule *Baldwin v. Coburn*, 39 Vt. 441, is
cited. In that case A was appointed commissioner of liq-
uors for a county, and had the power to appoint ten agents.
He appointed B agent for the town of F, and B agreed to
buy of A all the liquors needed to supply said town, and
C and D by bond agreed that he would do so. The court
held that the law contemplated that the agent should buy
without trammels, with reference to the public interest
only, and held the bond void.

It can not be said under the allegations in this answer
that the treasurer here selected a bank which was to be the
depositary of the public funds untrammeled and without
a personal interest, for the very object of the contract which

the answer alleges was entered into was to influence the action of the county treasurer in his selection of banks. And such influence is pleaded as forming the consideration upon which the contract should be sustained.

Mr. Pomeroy in his work on Equity Jurisprudence, in discussing this question, places first under the ban of the law contracts made for the purpose of unduly controlling or affecting official conduct, and says, § 935:

" All agreements directly or indirectly preventing or controlling the due administration of justice are opposed to the universal and most elementary principles of public policy. Whatever be their form and immediate purpose, and however innocent may be the motives of the parties, they are plainly invalid."

The authorities are grouped in the notes and the text, and this case falls squarely within the rule announced by many of them, which includes contracts for third persons, stipulating for their influence in procuring official administrative acts to be done.

The rule is thus announced by Bishop on Contracts, § 500:

" Any contract between an officer and a private person by which the former undertakes to do anything of official duty right or wrong, in accord with such duty or contrary to it, is in a greater or less degree an obstruction to the unbiased exercise of his office, even where it does not influence him corruptly; therefore it is *void*."

If there were no authorities upon this proposition, as a matter of first impression it would seem to us that the defense pleaded here shows a contract in violation of public policy and is void, and therefore forms no basis for an extension of time whether executory or executed.

The judgment will be affirmed.

SCOTT, C. J., and ANDERS, REAVIS and GORDON, JJ., concur.