GEORGE C. KENNEDY *vs.* MERRIMACK PAVING COMPANY.

Middlesex.   January 19, 1904. — April 2, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Negligence*, Employer's liability.

An experienced machinist cannot recover from his employer for an injury caused by his clothing catching on a set screw of a revolving shaft mounted on a flat car while he was attempting to step over the shaft on his way to carry out an order of a superintendent, especially if there was a safe way by which he could have gone to do work he had been ordered to do.

LATHROP, J.   This is an action of tort for personal injuries sustained by the plaintiff while in the employ of the defendant. The declaration contained three counts.   At the trial in the Superior Court the plaintiff elected to proceed upon the second and third counts.   The second count was at common law for being set to work in an unsafe place.   The third count was under the St. of 1887, c. 270, § 1, cl. 1, and alleged a defect in the condition of the ways, works or machinery.   At the close of the evidence for the plaintiff, the judge directed a verdict for the defendant, and the case is before us on the plaintiff's exceptions to this ruling.

The plaintiff was a man thirty-nine years old.   He was a machinist by trade, and had been an engineer for ten years before the injury, and was duly licensed as such under the laws of the Commonwealth.   At the time of the accident, June 20, 1902, the plaintiff had been employed by the defendant nine days as an engineer.   The defendant was a manufacturer of asphalt.   Its plant was divided into three parts.   The first was where the asphalt was put into large kettles, underneath which fires were lighted and the asphalt liquefied.   The other two parts were placed upon an ordinary flat car, about forty-five feet long and seven feet wide, located upon a spur track of a railroad.   The boiler, air tank and engine were at one end of the car, and at the other end were two steam jackets and a machine containing sand drums.   These drums were about three feet in diameter and twenty feet in length.   Between the engine

and the steam jackets there was a rectangular space three and a half or four feet wide, six feet measuring across the width of the car, six feet in height, and partly open at the top. In this space was the main shaft, two and a half inches in diameter. It was about ten feet long, and extended across and beyond the sides of the car. It rested upon bearings attached to the floor of the car, and was about two and a half feet from the floor. On each end of the shaft on the outside of the bearings was a collar fixed and adjusted with set screws, and outside of these collars on each end of the shaft was a pulley about four feet in diameter, the one on the side of the car where the plaintiff was injured having a twelve inch face. On the main shaft and just inside the bearing at this side of the car was the hub of an old wheel or pulley, about four inches in length, measuring along the shaft, and of a diameter about four inches including the diameter of the shaft. There were five broken spokes sticking out of this hub from three quarters of an inch to an inch and a quarter. The hub was attached to the shaft by a set screw extending out from the outward surface of the hub about two inches. The main shaft was seventeen inches from the engine, and about two feet from the steam jackets.

On the morning of the injury one Gately, who appears by the evidence to have had charge of the works in the absence of the general superintendent, called to the plaintiff to help him put on a belt which had slipped off a pulley attached to the main shaft. The belt was put on but slipped off two or three times. Then Gately decided to put up a stick to keep the belt on, and said to the plaintiff: "I want you to go in there and block up that stick." The plaintiff went up a ladder to the platform of the car, and turned round from the ladder with his right foot between the air tank and the main shaft, a space seventeen inches wide, intending to step over the shaft, when his overalls were caught at the right knee and his clothes were stripped off by being wound around the old collar. He caught hold of an upright plank, but finally fell to the platform of the car and was injured. There was evidence from the plaintiff and Gately that there was another way to reach the place where the stick was, which would have been safe and would not have necessitated stepping over the shaft. The plaintiff further testified that he

had entire charge of the boiler and engine of the defendant's plant; that he knew the shaft was revolving and the machinery running; that he did not know that there was a set screw in the hub; that he did not know whether the hub was serving as a collar or not; that it might have been so serving; that he knew of the use of set screws in various places, that all machinery has them; that a pulley generally has a set screw; and that he did not know how near to the shaft he was when caught, as he was looking for the plank.

Upon this evidence we are of opinion that the ruling at the trial was right. The plaintiff was a man of experience; and, while he testified that he did not know of the existence of the old collar on the shaft, he had ample opportunity to ascertain its existence. The defendant was not bound to change his machinery or to point out to the plaintiff the fact of the existence of the set screw or the collar. The danger from the revolving shaft was apparent, and as such shafts have collars fastened to them by set screws, a fact well known to the plaintiff, his getting so near the shaft as to be caught was an act of negligence. Moreover he could have gone by a safer way, and, unless he chose to take the risk of stepping over a revolving shaft, he could have stopped the engine, over the running of which he had full control. *Demers* v. *Marshall*, 178 Mass. 9, and cases cited.

*Exceptions overruled.*

*J. J. Hogan*, for the plaintiff.
*F. E. Dunbar*, for the defendant.