(No. 5348. Decided July 27, 1905.)

GERTRUDE STRATTON et al., Respondents, v. C. H. NICHOLS LUMBER COMPANY et al., Appellants.[1]

MASTER AND SERVANT—NEGLIGENCE—INDEMNITY—FACT THAT DEFENDANT CARRIES ACCIDENT INSURANCE — TRIAL — CONDUCT OF ATTORNEY. It is reversible error for counsel to make statements and ask questions in the presence of the jury from which it would be inferred that the defendant in a personal injury case carried casualty insurance, and to make an offer of proof that a witness was an attorney for the casualty company which insured the defendant.

SAME—CONDUCT OF ATTORNEY—STATEMENTS OUTSIDE OF EVIDENCE. It is prejudicial error for counsel, during the examination of witnesses, to continually and notwithstanding repeated objections, interpolate statements of fact to such an extent that the jury might confuse the same with the evidence of the witnesses.

1Reported in 81 Pac. 831.

MASTER AND SERVANT—NEGLIGENCE—PROXIMATE CAUSE—CONJECTURE—INJURY FROM SET SCREW. Where a laborer in a mill is killed by reason of coming in contact with a set screw upon a revolving shaft, while executing an order to remove and tie back a belt from a pulley, and no one saw the accident or knew how he happened to come in contact with the set screw, a verdict for the plaintiff must be set aside; since no explanation of the accident can be made except by speculation, surmise, or guess.

SAME. It cannot be argued that it was necessary for him to stand upon the rack in order to reach and remove the belt which was tight, when it appears that the belt was loosened and already removed, and could be reached from below, and was tied on one side before the accident.

SAME — TWO METHODS, ONE SAFE — CONTRIBUTORY NEGLIGENCE. Where a laborer in a mill came in contact with a set screw upon a revolving shaft, while executing an order to remove a belt from a pulley and tie it back, by reason of standing on a nearby rack, and it appears that he might have executed the order without coming near the shaft, by standing upon benches below the belt, which method was perfectly safe, he is guilty of contributory negligence precluding a recovery.

SAME — NEGLIGENCE OF FOREMAN IN STARTING MILL — WARNING. Negligence cannot be predicated on the act of a foreman in starting a mill while an employee was in the act of removing a belt from a pulley, where it appears that a signal for the starting was given and the mill was running two or three minutes before the servant was injured, who therefore had ample notice, and where the belt could have been safely removed while the mill was in motion.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 26, 1904, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for the death of a servant caught by a set screw in a revolving shaft. Reversed.

*Root, Palmer & Brown* and *Douglas, Lane & Douglas,* for appellants, contended, among other things, that a set screw eight or nine feet above the floor is "protected" as that term is commonly used. *Glassheim v. New York Economical Print. Co.,* 34 N. Y. Supp. 69; *Glens Falls Portland Cement Co. v. Travelers' Ins. Co.,* 162 N. Y. 399, 56 N. E. 897; *Powalske v. Cream City Brick Co.,* 110 Wis. 461, 86 N. W.

153; *Groff v. Duluth Imperial Mill Co.,* 58 Minn. 333, 59 N. W. 1049; *Byrne v. Nye & Wait Carpet Co.,* 61 N. Y. Supp. 741; *Williams v. Wagner Co.,* 110 Wis. 456, 86 N. W. 157. There was no evidence or information as to how the accident happened. *Armstrong v. Cosmopolis,* 32 Wash. 110, 72 Pac. 1038; *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72 Pac. 457; *Reidhead v. Skagit County,* 33 Wash. 174, 73 Pac. 1118. The plaintiff assumed the risk of injury from a set screw. *Ford v. Mt. Tom Sulphite Pulp Co.,* 172 Mass. 544, 52 N. E. 1065, 48 L. R. A. 96; *Kennedy v. Merrimack Paving Co.,* 185 Mass. 442, 70 N. E. 437; *Demers v. Marshall,* 172 Mass. 548, 52 N. E. 1066; *Wabash Paper Co. v. Webb,* 146 Ind. 303, 45 N. E. 474; *Donahue v. Washburn & Moen Mfg. Co.,* 169 Mass. 574, 48 N. E. 842; *Goodridge v. Washington Mills Co.,* 160 Mass. 234, 35 N. E. 484; *Schroeder v. Michigan Car Co.,* 56 Mich. 132, 22 N. W. 220; *Hale v. Cheney,* 159 Mass. 268, 34 N. E. 255; *Knisley v. Pratt,* 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367. The improper conduct of counsel and statements outside of the record constituted reversible error. *Fuller Co. v. Darragh,* 101 Ill. App. 664; *Wildrick v. Moore,* 22 N. Y. Supp. 1119; *Roche v. Lewellyn Iron Works Co.,* 140 Cal. 563, 74 Pac. 147; *Manigold v. Black River Traction Co.,* 80 N. Y. Supp. 861; *Cosselmon v. Dunfee,* 172 N. Y. 507, 65 N. E. 494; *Sawyer v. Arnold Shoe Co.,* 90 Me. 369, 38 Atl. 333; *Tremblay v. Harnden,* 162 Mass. 383, 38 N. E. 972; *Dow v. Weare,* 68 N. H. 345, 44 Atl. 489; *Brown v. Swineford,* 44 Wis. 282, 28 Am. Rep. 582; *Smith v. Western Union Tel. Co.,* 55 Mo. App. 626; *Schaidler v. Chicago etc. R. Co.,* 102 Wis. 564, 78 N. W. 732; *Louisville etc. R. Co. v. Orr,* 91 Ala. 548, 8 South. 360; *Thompson v. Toledo etc. R. Co.,* 91 Mich. 255, 51 N. W. 995; *Ensor v. Smith,* 57 Mo. App. 584; *Illinois Central R. Co. v. Souders,* 79 Ill. App. 41; *Jacques v. Bridgeport Horse R. Co.,* 41 Conn. 61, 19 Am. Rep. 483; *Blum v. Simpson,* 66 Tex. 84, 17 S. W. 402.

*John B. Hart* and *Robert W. Prigmore,* for respondents. It was negligence to supply the set screw and fail to protect it, where the appliance could easily be replaced by a safer one. *Crooker v. Pacific Lounge etc. Co.,* 29 Wash. 30, 69 Pac. 359; *Carlson v. Wilkeson Coal & Coke Co.,* 19 Wash. 473, 53 Pac. 725; *Washington etc. R. Co. v. McDade,* 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; *Choctaw etc. R. Co. v. McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *Geno v. Fall Mountain Paper Co.,* 68 Vt. 568, 35 Atl. 475; *Homestake Min. Co. v. Fullerton,* 69 Fed. 923; *Sawyer v. Arnold Shoe Co.,* 90 Me. 369, 38 Atl. 333; *Austin v. Chicago etc. R. Co.,* 93 Iowa 236, 61 N. W. 849; *Wabash R. Co. v. McDaniels,* 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605; *Bean v. Oceanic Steam Nav. Co.,* 24 Fed. 124; *Nyback v. Champagne Lumber Co.,* 109 Fed. 732; *Craver v. Christian,* 36 Minn. 413, 31 N. W. 457, 1 Am. St. 675; *King v. Ford River Lumber Co.,* 93 Mich. 172, 53 N. W. 10; *Anderson v. Fielding,* 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665; *Martin v. California Cent. R. Co.,* 94 Cal. 326, 29 Pac. 645; *Sincere v. Union Compress & Warehouse Co.* (Tex. Civ. App.), 40 S. W. 326; *Lowrimore v. Palmer Mfg. Co.,* 60 S. C. 153, 38 S. E. 430; *Bonner v. Pittsburgh Bridge Co.,* 183 Pa. St. 195, 38 Atl. 896; *Kehler v. Schwenk,* 151 Pa. St. 505, 25 Atl. 130, 31 Am. St. 777; *Myers v. Hudson Iron Co.,* 150 Mass. 125, 22 N. E. 631, 15 Am. St. 176; *Troxler v. Southern R. Co.,* 124 N. C. 189, 32 S. E. 550, 70 Am. St. 580, 44 L. R. A. 313; *Greenlee v. Southern R. Co.,* 122 N. C. 977, 30 S. E. 115, 65 Am. St. 734, 41 L. R. A. 399; *Witsell v. West Asheville etc. R. Co.,* 120 N. C. 557, 27 S. E. 125. The distance from the floor is no protection. *King v. Ford River Lumber Co., supra; Glens Falls Portland Cement Co. v. Travelers' Ins. Co.,* 162 N. Y. 399, 56 N. E. 897; *Pullman's Palace-Car Co. v. Harkins,* 55 Fed. 932. It was negligence to change the set screw without giving notice. *Morton v. Moran Bros.,* 30 Wash. 362, 70 Pac. 968; *Craver v. Christian,* 34 Minn. 397, 26 N. W. 8; *Mirick v. Morton,*

62 Kan. 870, 64 Pac. 609; *O'Donnell v. Sargent,* 69 Conn. 476, 38 Atl. 216; *Ryan v. Chelsea Paper Mfg. Co.,* 69 Conn. 454, 37 Atl. 1062; *Northwestern Fuel Co. v. Danielson,* 57 Fed. 915; *Cincinnati etc. R. Co. v. Gray,* 101 Fed. 623; *Ingerman v. Moore,* 90 Cal. 410, 27 Pac. 306, 25 Am. St. 138; *McDougall v. Ashland Sulphite-Fibre Co.,* 97 Wis. 382, 73 N. W. 327; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215. The master may be liable for an injury due to slight forgetfulness or momentary inattention. *Nadau v. White River Lumber Co.,* 76 Wis. 120, 43 N. W. 1135, 20 Am. St. 29; *King v. Ford River Lumber Co.,* 93 Mich. 172, 53 N. W. 10; *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799. There is a presumption that the deceased exercised due care, and the burden of proof is upon the defendant to show contributory negligence. *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820; *Allend v. Spokane Falls etc. R. Co.,* 21 Wash. 324, 58 Pac. 244; *Rush v. Spokane Falls etc. R. Co.,* 23 Wash. 501, 63 Pac. 500; *Cogdell v. Wilmington etc. R. Co.,* 132 N. C. 852, 44 S. E. 618; *Dalton v. Chicago etc. R. Co.,* 104 Iowa 26, 73 N. W. 349; *Hopkinson v. Knapp & Spalding Co.,* 92 Iowa 328, 60 N. W. 653; *Texas etc. R. Co. v. Gentry,* 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; *Burns v. Chicago etc. R. Co.,* 69 Iowa 450, 30 N. W. 25, 58 Am. Rep. 227. The fact that the accident could have happened in one or more ways, does not leave the matter to conjecture; we only enter the field of conjecture in the absence of all proof. *Towle v. Stimson Mill Co.,* 33 Wash. 305, 74 Pac. 471; *Rush v. Spokane Falls etc. R. Co., supra; Allend v. Spokane Falls etc. R. Co., supra; Nelson v. Willey Steamship & Nav. Co.,* 26 Wash. 548, 67 Pac. 237; *Conner v. Missouri Pac. R. Co.,* 181 Mo. 397, 81 S. W. 145; *Southern R. Co. v. Webb,* 116 Ga. 152, 42 S. E. 395, 59 L. R. A. 109; *Powell v. Southern R. Co.,* 125 N. C. 370, 34 S. E. 530; *Indianapolis St. R. Co. v. Bordenchecker* (Ind. App.), 70 N. E. 995; *Portland Gold Min. Co. v. Flaherty,*

111 Fed. 312; *Miller v. Inman,* 40 Ore. 161, 66 Pac. 713. See, also, the following set screw cases especially in point: *Pruke v. South Park Foundry Machine Co.,* 68 Minn. 305, 71 N. W. 276; *Roth v. Northern Pac. Lum. Co.,* 18 Ore. 205, 22 Pac. 842; *Daubert v. Western Meat Co.,* 135 Cal. 144, 67 Pac. 133; *Guinard v. Knapp, Stout & Co.,* 95 Wis. 482, 70 N. W. 671; *Id.,* 90 Wis. 123, 62 N. W. 625, 48 Am. St. 901; *Hawkins v. Johnson,* 105 Ind. 29, 4 N. E. 172, 55 Am. Rep. 169; *Keller v. Gaskell,* 9 Ind. App. 670, 36 N. E. 303; *Id.,* 20 Ind. App. 502, 50 N. E. 363; *Galveston Oil Co. v. Thompson,* 76 Tex. 235, 13 S. W. 60.   The mere asking of questions relating to indemnity insurance is not reversible error.   *Shoemaker v. Bryant Lumber etc. Co.,* 27 Wash. 637, 68 Pac. 380; *Portland Gold Min. Co. v. Flaherty,* 111 Fed. 312; *Wabash Screen Door Co. v. Black,* 126 Fed. 721; *Marande v. Texas etc. R. Co.,* 124 Fed. 42; *Belle of Nelson Distilling Co. v. Riggs,* 104 Ky. 1, 45 S. W. 99; *Spoonick v. Backus-Brooks Co.,* 89 Minn. 354, 94 N. W. 1079; *Foley v. Cudahy Packing Co.,* 119 Iowa 246, 93 N. W. 284; *Hedlun v. Holy Terror Min. Co.,* 16 S. D. 261, 92 N. W. 31; *Houston Biscuit Co. v. Dial,* 135 Ala. 168, 33 South. 268; *Iroquois Furnace Co. v. McCrea,* 91 Ill. App. 337; *Iroquois Furnace Co. v. McCrea,* 191 Ill. 340, 61 N. E. 79; *Anderson v. Duckworth,* 162 Mass. 251, 38 N. E. 510; *Gundlach v. Schott,* 192 Ill. 509, 61 N. E. 332, 85 Am. St. 348; *Barg v. Bousfield,* 65 Minn. 355, 68 N. W. 45; *O'Neill Mfg. Co. v. Pruitt,* 110 Ga. 577, 36 S. E. 59; *Shaler v. Broadway Imp. Co.,* 47 N. Y. Supp. 815.   There was no misconduct of counsel. *Van Lehn v. Morse,* 16 Wash. 219, 47 Pac. 435; *State v. Boyce,* 24 Wash. 514, 64 Pac. 719; *Taylor v. Ballard,* 24 Wash. 191, 64 Pac. 143; *Chezum v. Parker,* 19 Wash. 645, 54 Pac. 22; *State v. Moody,* 7 Wash. 395, 35 Pac. 132; *State v. Regan,* 8 Wash. 506, 36 Pac. 472; *State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *Epps v. State,* 102 Ind. 539, 1 N. E. 491; *Portland Gold Min. Co. v. Flaherty,* 111 Fed. 312; *Westercamp v. Brooks,* 115 Iowa 106, 88 N.

W. 372; *Weeks v. Scharer,* 129 Fed. 333; *Cameron Lumber Co. v. Somerville,* 129 Mich. 552, 89 N. W. 346; *Pittsburg etc. R. Co. v. Kinnare,* 203 Ill. 388, 67 N. E. 826; *Greenfield v. Detroit etc. R. Co.,* 133 Mich. 557, 95 N. W. 546.

Crow, J.—This action was brought by respondents, widow and minor son of George Stratton, to recover damages for his death, which occurred while he was working as an employee in the shingle mill of C. H. Nichols Lumber Company, one of the appellants, at Ballard, King county, Washington. From a judgment awarding damages in the sum of $20,000, this appeal has been taken.

George Stratton, a mill man of twenty years' experience, was employed in appellant's mill as a shingle sawyer, being in charge of a "ten-block" machine. Within six feet of him was another "ten-block" machine operated by one Freeman Jensen, a fellow servant. The mill was a two-story structure, the ten-block machines being located in the upper story and operated by power transmitted by means of certain shafts, belts, and pulleys. In the lower story was the main shaft, which was supported by hangers and cross-trees suspended from the ceiling, said shaft being about three inches in diameter and about nine feet above the floor. On this shaft was a pulley, over and from which an endless leather belt passed to another pulley on a countershaft in the upper room. On the countershaft were two other pulleys, from which belts passed to the machine, transmitting the power by which it was operated. The main shaft when in operation made about six hundred revolutions per minute. On the outside of the hanger from the main pulley, and towards the end of the shaft, a collar was placed, which was held in position by an exposed set screw, also about nine feet above the floor. The belt running from the main shaft pulley to the countershaft pulley was new, and respondents contend was too tight. On the upper floor an idler, or tightener, was provided, be-

ing so arranged as to be thrown against the belt taking up slack, thereby causing friction and operating the ten-block machine. The pulley on the main shaft was forty-two inches in diameter, and the one on the countershaft thirty-two inches in diameter.

The accident causing the death of George Stratton occurred on December 18, 1902, at about eight o'clock A. M. A short time before, Matthew Carey, the foreman of the mill and one of the appellants herein, ordered Mr. Stratton to cut out his ten-block machine until quartering time, which would be about 9:30 o'clock A. M., and respondents contend that Mr. Carey also ordered him to go below and tie back his main belt so as to prevent it from burning by rubbing against the main shaft pulley. The mill was stopped. Stratton threw off the belt, took two pieces of rope, and went below to tie it back. While the mill was stopped, his fellow-servant Jensen took advantage of the opportunity to change the saws on his ten-block machine. Respondents claim that, while Mr. Stratton was tying back the belt, the foreman, Mr. Carey, ordered the mill to start. This is denied by appellants. A signal whistle was given, the mill started, and in about two or three minutes thereafter, an unusual sound being heard below, the mill was stopped, when Stratton's dead body was found on the floor almost under the shaft, hanger, and set screw, while his clothing and one piece of the rope which he had carried were wrapped around the end of the shaft, the collar, and the set screw near the bridge-tree, on the side opposite from the main pulley. One side of the belt had been tied to the hanger or bridge-tree, but the other was not tied back. As above stated, the main shaft was about nine feet from the floor. On the lower floor, and almost under the shaft, were two benches, one being about twenty-four inches in height and the other about twenty-six. Below the main shaft and pulley, suspended from the hangers and cross-trees, probably about six feet from the floor, was a rack constructed of light pieces of timber, used for holding shingle bands. Opposite this

rack was a window, in the side of the building, with a sill or a cleat nailed across it.   When last seen alive Mr. Stratton was up near the shaft with one foot on the band rack and the other on the window sill or cleat, tying back one side of the belt.   No one saw him come in contact with the set screw, nor was any one able to tell how he happened to get caught.

Negligence on the part of appellants is claimed by respondents:   (1) In that Carey ordered Stratton to go below and tie back the belt, which was not a part of his usual employment;   (2) in the use of the unguarded set screw, which is claimed to have been a dangerous device not commonly used, recently placed on the shaft without Stratton's knowledge, without notice to him, and improperly adjusted;   (3) in using a belt from the main pulley to the countershaft pulley which was too tight and therefore difficult to remove;   (4) in that Carey ordered the mill started while Stratton was tying back the belt.   All of these claims are vigorously denied by appellants.

Many assignments of error have been presented, a number of which are sufficient to warrant a reversal; but as we have arrived at a conclusion which necessitates a dismissal of this action, we will not consider them further than to discuss one based upon misconduct of counsel.   At the time of empaneling the jury, respondents' attorney persisted in asking each of the jurors on their *voir dire* whether they were connected with any guaranty or casualty insurance company, saying in explanation: "Any kind that insured a mill company against loss; that is, if the mill company was negligent, why then some insurance company paid the damages;" and when counsel for appellants objected, remarked: "You don't mean to say that the Nichols mill company is not insured?"   Again, upon cross-examination of one E. B. Palmer, an attorney and one of appellants' witnesses, counsel asked if he was not attorney for the casualty company which insured the mill.   An objection being sustained, he then offered to prove by cross-

examination of Mr. Palmer that he was such attorney. Under the authority of *Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202, and *Lowsit v. Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431, this was improper conduct and constituted prejudicial error. Again, under the guise of questions propounded to witnesses, counsel for respondents placed himself in the attitude of making statements of alleged fact, doing so repeatedly, over objection of opposing counsel, so much so in fact that, in making an examination of the record, we ourselves have experienced much difficulty in distinguishing these unsworn statements from evidence given by witnesses. It can be readily seen that a jury might easily get these statements and expressions confused with evidence actually admitted. As one illustration: Counsel for appellants propounded this question to a witness: "Well, now, it is not customary to box shafts that are up over a man's head, is it?" Whereupon counsel for respondents stated: "I object, if your honor please, as incompetent because it is customary to box shafts and protect them wherever they are dangerous, and they are dangerous wherever people have to be." This course of counsel was continuous, being maintained during the entire trial, although constantly objected to by attorney for appellants, and in face of the fact that in nearly every instance such objections were sustained. It is true the trial was bitterly and ably fought on both sides, and in the heat of a strenuous contest counsel may have in part failed to fully realize the course he was pursuing. But such conduct in the presence of a jury is inexcusable, and cannot fail to be highly prejudicial. Were this the only error assigned, we would, in the light of the record, be compelled to reverse the judgment by reason of such misconduct.

At the close of respondents' case, and again at the close of the entire case, appellants challenged the sufficiency of the evidence and moved for judgment. Many points are presented in support of this motion, but we will consider two only.

(1)    Appellants contend that, even though it be conceded
negligence has been proven on their part, still there is an
utter failure of evidence showing or tending to show that the
accident was the proximate result of such negligence.    In
other words, it is contended that, as no one saw the accident
or knew how the deceased happened to come in contact with
the set screw, it will not do for the court or the jury to specu-
late, surmise, or guess as to how the deceased was caught, or
the accident happened.    In support of this contention appel-
lants cite, *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72
Pac. 457; *Armstrong v. Cosmopolis,* 32 Wash. 110, 72 Pac.
1038; *Reidhead v. Skagit county,* 33 Wash. 174, 73 Pac.
1118, which cases we think conclusive on this point.    In *Han-
sen v. Seattle Lumber Co., supra,* this court said:

"In order for the respondent to recover for his injury, it
was necessary for him to show not only that the appellant had
been guilty of negligence, but that such negligence was the
cause of his injury.    It is not necessary, of course, that the
facts be proven by direct evidence.    Circumstantial evidence
of the fact is sufficient.    But there must be some evidence,
either direct or circumstantial, that there was negligence on
the one side, an injury resulting in damages on the other,
and that the injury and damages followed the negligence, and
were produced thereby.  .  .  .    But there is no direct evi-
dence as to the cause of the injury, and it is not proving his
case by circumstantial evidence for the respondent to show
that there were causes, for which the appellant would be liable,
which could have produced the injury, without showing that
it could not have been produced in any other manner, or in a
manner for which the appellant would not be liable."

After making the above statement, this court proceeds to
quote with approval from the case of *Patton v. Texas etc. R.
Co.,* 179 U. S. 658, 21 Sup. Ct. 275, language of Mr. Justice
Brewer which is especially pertinent here.    In *Armstrong v.
Cosmopolis, supra,* Dunbar, J., uses the following language:

"But while it is true that the weight of the testimony is
entirely for the jury, yet mere speculation and conjecture
must not be confused with legitimate testimony.    There are

many theories which might be advanced, which would be mere guessing, that would be as reasonable as the theory contended for by appellants."

In addition to the above authorities, the following might be consulted as supporting appellants' proposition: Bailey, Master's Liability, p. 503 *et seq.; Mountain Copper Co. v. Van Buren,* 123 Fed. 61. Applying the principles above enunciated, we find an utter absence of evidence showing or tending to show how the deceased came in contact with the set screw. There is no question but that he was caught. The last seen of him, however, he was on the opposite side of the hanger from the collar and set screw, with one foot upon the band rack and one on the window sill, tying back the belt.

Ten special interrogatories were propounded to the jury, two of which, with the answers of the jury, read as follows:

"Q. Did he [Stratton] place himself against the set screw or shaft knowingly and intentionally? A. No. Q. Did he come in contact with it accidentally? A. No."

It is contended by appellants that these answers are absolutely inconsistent. On the other hand, respondents contend they are not inconsistent, but are warranted under all the circumstances of the case, and in support of their contention they urge that the interrogatories were unfair; that their submission was a trick upon the part of appellants, seeking to take advantage of the jury; that the jury did all it could in answering them in the negative; that such answers were correct, for the reason that there was no evidence tending to show how the deceased came in contact with the set screw. Either the appellants are correct in their position that the answers are inconsistent, or respondents are correct in saying that the answers given became necessary by reason of the absence of evidence. Upon either theory, no explanation of the accident can be made except by speculation, surmise, or guess, and under the above authorities, this cannot be permitted. We are of the opinion that the answers to these two

interrogatories are inconsistent with the general verdict, and that said verdict should not be sustained.

(2)     Appellants also contend that, in tying back the belt, the deceased placed himself in a dangerous position, whereas he could have done it from another position which was perfectly safe and free from danger, and urge that where a servant has an opportunity of doing work in two ways, one safe and the other dangerous, and accepts the dangerous method, he is guilty of contributory negligence and cannot recover even though his master be negligent.   In support of this position appellants contend, and we think with much reason, that it was not necessary for the deceased to climb upon the band rack and sill to tie back the belt.   It is in evidence that there were two benches under the shaft, twenty-four and twenty-six inches in height, respectively.   The shaft was nine feet from the floor, or about seven feet above these benches.   The pulley was forty-two inches in diameter, which necessarily brought the belt at least twenty-one inches below the shaft, or about five feet and three inches above the benches; and appellants contend that, instead of climbing upon the band rack, the deceased could have easily stood upon these benches and tied back the belt without coming near, or in contact with, the shaft or set screw; that this method was perfectly safe, and that, had it been adopted, Stratton would have been in no danger whatever whether the machinery was moving or not.   We think this contention should be sustained. *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Glassheim v. New York Economical Print. Co.,* 13 Misc. Rep. 174, 34 N. Y. Supp. 69; *Kennedy v. Merrimack Paving Co.,* 185 Mass. 442, 70 N. E. 437.

It is urged, however, by respondents that it was necessary for Stratton to climb up on the band rack to take off the belt, as it was too tight and could not be readily removed from below.   The record shows that, before leaving the ten-block machine above, he removed the belt. The upper pulley was thirty-two inches in diameter, and when the belt was re-

moved from said pulley it would have necessarily fallen at least sixteen inches. It could not, therefore, have been too tight. It must have been off of and below the lower pulley when Stratton went downstairs. In any event, he had tied it back to one hanger before he was hurt, and must have had it off the pulley at that time. It appears to be a proposition capable of mathematical demonstration that it was absolutely unnecessary for the deceased to climb upon the band rack to tie back the belt, and that he could have tied it back while standing on the benches.

It is also contended by respondents that the foreman was guilty of negligence in ordering the mill started while Stratton was tying back the belt. There is no evidence that any intention existed of not starting the mill, or that it was not customary for it to be in operation while an employee was tying back a belt. But in any event, it is in evidence that, before the mill was started, a signal was given by two blasts from a steam whistle, and that the mill had been running two or three minutes before the accident occurred. It is self-evident that a person caught upon a shaft revolving at the rate of six hundred revolutions a minute would be thrown off in not to exceed one or two seconds of time. The mill, therefore, must have been running for a considerable time before deceased was caught on the set screw. In any event, he had ample notice of the starting of the mill by the giving of the signal, which could be readily heard where he was working.

We have before us a large model of the mill, introduced in evidence by respondents, which shows the relative positions of the shafts, pulleys, collar, set screws, hangers, band rack, belts, benches, idler, ten-block machine, and, in fact, all appliances in the mill material to a correct understanding of the situation After a most painstaking and careful examination of all the evidence, aided by the presence of this model, we are unable to see how it can be successfully contended that the deceased was not guilty of contributory neg-

ligence. The accident was a most lamentable and unfortunate one. The respondents have been deprived of husband and father, and their loss is immeasurable. This, however, is not sufficient reason for awarding damages against the appellants, who are not liable. The courts must administer the law according to its well-established principles.

The judgment of the trial court is reversed, and the cause remanded, with instructions to dismiss the action.

MOUNT, C. J., FULLERTON, HADLEY, and RUDKIN, JJ., concur.

ROOT, J., having been of counsel, took no part.