[No. 7323.  *En Banc.*  September 29, 1909.]

THOMAS WELL, *Respondent*, v. MORAN BROS. COMPANY *et al.*, *Appellants.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK—CHOICE OF WAYS. The rule that there can be no recovery by a servant who chose a dangerous way, when there was a safe one open to him, assumes that he had knowledge of the danger, and does not apply where there were two ways of ascending a turret in a battleship, both free from danger when the hoists were not in operation, and he, without warning, accidentally chose one, not knowing that it was in operation.

SAME—EVIDENCE—QUESTION FOR JURY. In such a case, where the plaintiff testified that he did not know the hoist was in operation, and that when operated it made such noise that any one could hear it, and he neither saw nor heard it, the question whether it was in operation when he started is for the jury. .

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $4,000 for injuries resulting in a fractured jaw, the loss of an ear, disfigurement, and impaired physical condition, is not excessive.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 9, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in the construction of a battleship. Affirmed.

*Wright & Kelleher* and *Harold Preston*, for appellants.

*Casey & Casey* (*Milo A. Root*, of counsel), for respondent.

[1]Reported in 104 Pac. 172.

FULLERTON, J.—The respondent brought this action against the appellants to recover damages for personal injuries received by him while in the appellants' employ as a machinist's helper, working on the battleship Nebraska. The jury at the trial in the court below returned a verdict for him in the sum of $4,000, for which sum judgment was entered in his favor. This appeal is from the judgment so entered.

The accident to the respondent occurred in the forward turret of the battleship. The turret rests on the protective deck and is operated by motors placed thereon. It is circular in form, and inside of it an opening extends from the turret pan, the floor directly below the floor on which the guns are placed, down through it and through the ship proper to a floor known as the twelve-inch handling room. Surrounding this space are several floors or galleries, which, commencing at the bottom, are called in the record by the following names: The twelve-inch handling room, the eight-inch handling room, the protective deck, the gallery above the protective deck, the turret pan, and the top of the turret, this last being the floor on which the heavy guns are placed. In the center of this opening is placed a framework running from the floor of the twelve-inch handling room to the gun floor, to which framework are attached the tracks for the ammunition hoists. These tracks are perpendicular until they reach near the turret pan, when they separate, the one swerving towards the breech of the right-hand gun and the other towards the left, and pass through the floor of the turret pan by separate openings. The several floors or galleries above mentioned are connected by ladders. A ladder also extends from the twelve-inch handling room up the center frame between the tracks of the ammunition hoists to the level of the gallery immediately above the protective deck, and is connected with the gallery by means of a grating extending from the top of the ladder to the gallery floor. From the gallery floor last mentioned, ladders run up through the

openings in the turret pan through which the ammunition hoists pass. These openings are opposite each other, and while the ladders passing through them may be used with safety when the ammunition hoists are not in operation, they are extremely dangerous when the hoists are being used, owing to the narrowness of the passage through the turret pan.

The accident occurred in the afternoon. At that time the respondent had been working in and around the turret for a day and a half, doing such work as he was directed to do either by the machinist of whom he was the helper or the foreman in charge. The turret was then practically completed, and its various parts were being tested before the government inspectors. Either the day before or on the morning of the day of the accident, the turret itself had been tested for mobility, and in the test the motors operating it had been used. Oil had been used on the motors rather freely, and had run down and accumulated on the floor around them. The foreman, observing this, directed the respondent to go and get some waste and wipe up the oil. In obedience to this order, the respondent started to climb up through the turret to the upper deck where he expected to find some waste, and had reached and stepped out onto the foot of the left-hand ladder leading to the turret pan, when the ammunition hoist descended and struck him on the head, causing the injury for which he sues.

The witnesses do not agree as to the place the respondent was standing when the order to get the waste was given. The respondent thinks he was then on the protective deck, while the foreman testifies he was on the floor below the protective deck, the floor of the eight-inch handling room. The point is material only as it indicates the probable route of the respondent in going for the waste. If he was on the floor of the protective deck, he probably took the ladder between the ammunition hoists to a place on a level with the gallery above the protective deck, and crossed the grating above

mentioned onto the floor of the gallery. This course would bring him directly in contact with the tracks of the ammunition hoists, so that if either hoist had been in operation he could scarcely have failed to note the fact. If, however, he was already on the protective deck, he probably took a side ladder to the gallery, in which event he would have been some feet farther from the tracks of the hoists and correspondingly less likely to have noticed whether either of them was then in operation.

According to the appellants' evidence, a test of the left ammunition hoist was being made at the time the respondent was struck, and that this test had then continued for about ten minutes, during which time the hoist had made a trip from the floor of the twelve-inch handling room to the breech of the gun and back, the distance between the two points being thirty-seven and one-half feet, at least once in each minute. It was shown that the hoist was of considerable weight, and, running on tracks similar to a car, as it did, made a noise so loud and distinct that no one near it could fail to hear and observe it. The respondent testified that if the hoist was in operation at the time of the injury he did not know it; saying, in answer to direct questions put to him by appellants' counsel, that he neither saw nor heard it running.

The respondent was not directed to go to any particular place to get the waste, nor was it shown where the waste was kept. He was expected, apparently, to find it where he could, and to search the vessel until he did find it. In going to the top of the turret, however, he had a choice of ways. He could have gone to the gallery above the protective deck by the route he did take, and then have passed into the turret pan by way of the right-hand opening instead of the left, or he could have gone to another part of the ship and ascended on ways there provided, either of which would have afforded him a safe route.

The appellants moved for a nonsuit at the conclusion of the respondent's case in chief, and at the conclusion of the en-

tire case, challenged the sufficiency of the evidence to justify
a verdict for the respondent.  The motion and challenge were
overruled, and the court's ruling in so doing constitute the
principal errors assigned.  It is the appellants' contention
that the respondent was guilty of contributory negligence in
that he had a choice of ways equally available to him by which
to reach the upper deck of the vessel, only one of which was
dangerous, and that he voluntarily chose the dangerous way.
In support of the contention *Lewis v. Simpson*, 3 Wash. 641,.
29 Pac. 207; *Hoffman v. American Foundry Co.*, 18 Wash.
287, 51 Pac. 385; *Stratton v. Nichols Lumber Co.*, 39 Wash..
323, 81 Pac. 831, 109 Am. St. 881; *Bundy v. Union Iron
Works*, 46 Wash. 231, 89 Pac. 545, and kindred cases an-
nouncing a doctrine similar to that announced in these cases,.
are cited.  These cases do maintain the principle that when
a servant has a choice of ways of doing his work, the one
fraught with peril and the other safe, and voluntarily adopts
the dangerous way, he is guilty of contributory negligence.
But these cases are all based on the assumption that the ser-
vant has knowledge of the conditions surrounding his work,
and chooses the dangerous way, or dangerous method of doing
the work, with the extra hazard in view.  It was not so with
the respondent in the case at bar, unless we are to ignore en-
tirely his own testimony.  His evidence is to the effect that he
did not know that the hoist was in operation at the time he
attempted to pass through the opening in the turret pan;.
that he had seen it operated several times before this par-
ticular day, and that when it was operated it made such a
noise that any one near it would observe it, but that he neither
saw nor heard it on this occasion.  If this be true he was not
guilty of negligence.  The ways were alike and equally free
from danger when the hoists were not in use, and he had no
more reason to suspect danger from the one way than from
the others.  Such being the case, his choice of the dangerous
way was accidental rather than voluntary, and he is not to
be held negligent because of an accidental selection of the

dangerous way. He stood in the position of a servant who had been directed to work in a dangerous place without being warned of the danger. He did not assume the risk of injury. That risk was on the master because of its failure to warn him of the danger to be encountered in taking that particular way. *Ramm v. Hewitt-Lea Lumber Co.*, 49 Wash. 263, 94 Pac. 1081.

The appellants urge, however, that it was proved beyond question that the hoist was in operation, and that this court should not permit the respondent to assert that he had no knowledge of the fact. But this court cannot assume that it was established beyond question that this hoist was in operation while the respondent was ascending the ladders to the opening at which he was injured. That fact depends upon the memory of witnesses, and is contradicted in the record by the respondent's evidence. The question was one, therefore, for the jury and trial court, and since they found against the contention, this court has no rightful warrant to interfere with the finding.

It is contended that the award of damages was excessive. The accident fractured the respondent's jaw and caused the loss of his left ear, leaving him disfigured, and in a worse physical condition than he was formerly. We think that the sum of $4,000 not so disproportionate to the injury as to warrant us in interfering with the verdict. The judgment will stand affirmed.

RUDKIN, C. J., GOSE, MOUNT, CROW, PARKER, and DUNBAR, JJ., concur.