# FRANK P. FOX, Respondent, v. JACOB DOLD PACKING COMPANY, Appellant.

## Kansas City Court of Appeals, June 2, 1902.

1. **Jurisdiction:** REMOVAL TO FEDERAL COURT: NONSUIT: NEW SUIT. When an action is removed from the State to the Federal court, where on a trial the plaintiff takes a nonsuit, such proceedings do not oust the State court of jurisdiction of another action subsequently brought for the same cause.

2. **Trial Practice:** COST: STAYING PROCEEDINGS. Where after nonsuit on a trial the plaintiff begins a new action, it is in the discretion of the court to stay proceedings until the cost of the former action is paid, and in this cause the trial court in refusing such stay did not abuse its discretion.

3. **Evidence:** OBJECTION: APPELLATE PRACTICE. The appellate court can not review the action of the trial court in admitting evidence when the only objection urged is that such evidence was irrelevant, incompetent and immaterial.

4. **Contributory Negligence:** EVIDENCE: JURY QUESTION. On the evidence in the record it is held that the question of plaintiff's contributory negligence is properly submitted to the jury.

5. **Master and Servant:** VICE-PRINCIPAL: FELLOW-SERVANT: DIFFERENT DEPARTMENT. A vice-principal is one who has the right to speak for the master, and that is a mixed question of law and fact; and the mere fact that the employee is engaged in a different department from other employees does not prevent his being their fellow-servant.

6. ———: ———: EVIDENCE. One who has the power to direct and look after the master's business is, without regard to what he is called, a vice-principal and the mere fact that he has no right to employ and discharge laborers, is not a conclusive test.

7. ———: NEGLIGENCE: INSTRUCTION: HARMLESS ERROR. Certain instructions announcing abstract propositions of law are held harmless error, as other instructions clearly submit the real issues to the jury.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Pratt, Dana & Black* for appellant.

(1)   The trial court erred in overruling defendant's motion to dismiss this action for want of jurisdiction.   Powers v. Railroad, 169 U. S. 97; Cox v. Railroad, 68 Ga. 448; Railroad v. Fulton, 59 Ohio St. 575.
(2)   The trial court erred in overruling defendant's motion to stay proceedings in the case at bar until the cost taxed against plaintiff in his former suit upon the same cause of action should be paid.   23 Am. and Eng. Enc. of Law, 527; Ex parte Street, 106 Ala. 102; Sooy v. McKean, 9 N. J. Law 88; Buckles v. Railroad, 47 Fed. Rep. 424; Jones v. Barnard, 63 Mo. App. 501.
(3)   The trial court erred in admitting, over defendant's objection, irrelevant, incompetent and immaterial testimony.   (4)   The trial court erred in refusing to direct a verdict in favor of defendant at the close of plaintiff's case and again at the close of all the evidence:   (a) Because of plaintiff's contributory negligence.   McDonnell v. Railroad, 105 Iowa 459; 1 Bailey's Personal Injuries Relating to Master and Servant, pp. 392, 393; Moore v. Railroad, 146 Mo. 572, 582; Coal Co. v. Head, 66 S. W. 721; Kinney v. Corbin, 132 Pa. 341; Penn. Co. v. O'Shauhgnessy, 122 Ind. 588; Railroad v. Estes, 37 Kan. 715; Poindexter v. Paper Co., 84 Mo. App. 352.   (b) Because the negligence, if there was any shown, on the part of defendant's employees, was that of co-servants with plaintiff, of whose competency no complaint is made, in failing to use appliances furnished by defendant which were suitable for the purpose.   Negligence of the master can not be predicated upon an improper use of or failure to use suitable appliances.   Sofield v. Smelting Co., 64 N. J. Law 605; Filbert v. Canal Co., 121 N. Y. 207; Railroad v. Charless, 162 U. S. 359, 364; Railroad v.

Brown, 73 Fed. Rep. 970, 974 (U. S. C. C. A.); 1
Bailey's Personal Injuries Relating to Master and Ser-
vant, secs. 154, 155, 157, 160, 163, 290 and 316; Lawless
v. Gas Co., 72 Mo. App. 679; Carrigan v. Mfg. Co., 170
Mass. 79; Marshall v. Hay Press Co., 69 Mo. App. 256;
Watson v. Coal Co., 52 Mo. App. 366; Garland v. Rail-
way, 85 Mo. App. 579; Card v. Eddy, 129 Mo. 510;
Moore v. Railroad, 85 Mo. 858; Hawk v. Lumber Co.,
65 S. W. 1022; Duke v. Lewiston, 83 Me. 217.  (c)
Furthermore, plaintiff failed to show how long the con-
dition of the vat of which he complained had existed,
or that it had existed long enough to charge defendant
with knowledge of such condition and afford it time to
do what was necessary to correct it.  Burns v. Rail-
road, 129 Mo. 41; Perkins v. Railroad, 103 Mo. 59;
Yarnell v. Railroad, 113 Mo. 580; Sherman & Redfield
on Negligence (4 Ed.), secs. 194 and 222; Hough v.
Railroad, 100 U. S. 213; Covey v. Railroad, 86 Mo. 641;
Williams v. Railroad, 119 Mo. 316; King v. Railroad, 90
Mo. 520.  (5)  The trial court erred in giving plain-
tiff's instructions Nos. 1 and 2.


*Ben. T. Hardin* for respondent.

(1) The trial court had jurisdiction of this cause;
there is absolutely nothing in the first point in appel-
lant's brief.  This court has settled the question, and
life is too short to worry the court further on this point.
Krueger v. Railroad, 84 Mo. App. 358.  (2) The court
committed no error in overruling defendant's motion
to stay proceedings until costs were paid.  (3)  There
is no reversible error in admitting testimony in the
trial.  Roe v. Bank, 167 Mo. 406; Lumber Co. v. Rogers,
145 Mo. 445.  (4)  The questions of negligence, and
contributory negligence would be more properly raised
if the case were before a jury, and appellant's argu-
ment would be more appropriate there than here.  (5)
There was no error committed by the trial court in giv-
ing and refusing instructions; the case was well tried,

the judgment was for the right party, and the appellant is in no condition to complain here.

BROADDUS, J.—This is a suit for personal injuries sustained by the plaintiff while in the employ of the defendant, on the ground of alleged negligence.

On the twenty-ninth day of August, 1898, the defendant was engaged, amongst other things, in manufacturing ice at its place of business in Kansas City, Missouri. The building in which the ice was so manufactured was of brick, about seventy-five feet wide from east to west and about ninety-five feet long from north to south; along the center of this building, running north and south, were two large brine tanks in which ice was frozen; each tank was eighty-six feet long and thirty-two feet wide, between which there was a space separating them of about two feet; over each tank, and making a sort of floor, was a skeleton or frame of timbers with rectangular spaces opening down into the brine, through which were placed cans filled with water which was frozen into ice by the action of the brine; these cans were about four feet long and about eighteen inches thick; over each tank was a moving crane which could be operated backward and forward, so that when the water in a can was frozen the crane was attached and by it the can was lifted out of the brine and carried to a space north of the tank where it was lowered into a vat of hot water to loosen the ice so that it would, when it was lifted out of the water, slip from the can onto a chute which led to the icehouse. There were two of these hot water vats, one for use in connection with each brine tank; these vats were located in the nine-foot space between the north ends of the tanks and the north wall of the building. The entrance into the building was from the west side near its northwest corner. There were two gangs of men operating the ice plant, one gang for day and the other for night work. The general manager of the plant was William B. Johnson, and the night gang was composed of Joseph Gurry, E. Brunk, C. Klein and E. Tobler. Johnson directed

the work during the day and left directions with Gurry
as to how the work was to be done at night.    There
were blackboards on the north wall—two near each
hot water tank—on which the ice pullers were to mark
the number of cakes taken out of the brine each hour,
the temperature of the water placed in the cans and the
back pressure, the men using for this purpose the
boards on the sides of their respective tanks.    There
was also a blackboard in the engine-room connected
with the works and on which various temperatures were
marked, that of the brine being among them.    It was
plaintiff's duty to obtain and mark these temperatures
on said board; it was also his duty, according to his tes-
timony, "to go over the house everywhere and pull
signals on boxes which registered up here in town. At
certain hours in the night" he "had to go through the
coolers—through the packing plant and take the tem-
perature of the coolers, and go through the icehouse
and take the temperature of brine in the ice-tank and
mark the temperature on a piece of paper and then take
them from the piece of paper and put them on the
blackboard, or a bulletin board as they called it." He
had been in defendant's employ in this capacity about
one year and knew all about the interior of the ice plant,
the location of the hot water vats, the thermometers,
etc.; he went in there every two hours each night and
his regular route was to enter by the door at the north-
west corner of the room, in front of which door, and
about fifteen feet away, was one of the hot water vats.
He stated that when he entered by this door it was his
custom to first obtain the temperature after which he
would walk to the blackboard north of the east vat and
mark on it the temperature of that vat; he would then
walk to the blackboard north of the west vat and mark
on it the temperature of that vat.    Defendant, however,
disputed plaintiff's claim of it being his custom to mark
on the blackboards in the ice plant.    Plaintiff stated
that a Mr. Roberts, who seems to have been general
manager of the defendant, wanted him to make out re-
ports of the temperature of the brine at night and turn

them into the office in the morning, but as that required
of plaintiff too much work, at his request Mr. Roberts
put up the blackboards in the ice plant upon which he
could mark the temperature of the brine.  The plain-
tiff alleges that on the night in question, after taking
the temperature of the first brine vat he walked over
to the second and took the temperature of that and
then walked to the door where his attention was called
to the men there.  He entered into a conversation with
these men, who were workmen or employes of defend-
ant, and told them the temperature of the brine was
high, whereupon Gurry said that he ought to have seen
what it was that day.  Klein, another of the group,
was going to one of the boards and said he would show
plaintiff.  The latter followed Klein, he says, to mark
down the temperature he had taken.  Klein was in
front and plaintiff followed holding his lantern in one
hand and the board with paper on which to mark the
temperature, and in the other he held his pencil.  Plain-
tiff then says that he picked up the thermometer to
ascertain the temperature at which time he stepped into
the hot water vat which was uncovered.  He was
scalded by the hot water in the vat and severely injured
thereby.

The evidence of defendant tended to show that the
blackboards Roberts had put up for plaintiff to register
the condition of the brine had only been put up the day
previous to the injury and that plaintiff had never used
them prior to said occasion.  It was shown that it was
the custom of the plaintiff to have these hot water vats
covered when not in use, and that at the time he fell into
one of them they were not in use and were uncovered.  It
was also shown that there was a lack of light in the build-
ing, but it was made to appear that had plaintiff held
his lantern in a different manner it would have afforded
sufficient light for him to have seen the uncovered vat.
The plaintiff says that when he started from the door
where he had been in conversation with Gurry and the
other men and followed Klein towards the thermome-

ter, he knew he was going in the direction of the vat but did not think of it.

Plaintiff seeks to recover on the ground that it was customary with the defendant to cover said vats when not in use; and that on the occasion when he was injured said vats were not in use, and that they were carelesly left open by defendant; and that the room in question, which had previously at all times been well lighted, was negligently left without sufficient light.

The defendant moved the court to dismiss plaintiff's petition for want of jurisdiction on the ground that in September, 1898, plaintiff had instituted suit upon the same cause of action in the circuit court of Jackson county, Missouri, which, upon petition of defendant, was removed to the United States Circuit Court for the western division of the western district of Missouri; that on a trial in said last-named court the plaintiff, at the conclusion thereof, took a nonsuit; and that by reason thereof the said court having once obtained jurisdiction, said State court has now no power or jurisdiction over said cause. Said motion, on hearing, was overruled by the court. The defendant revived by its answer the matters and things set up in said motion as a defense; and further answered by a general denial and allegation of contributory negligence. The defendant further moved to stay the proceedings on the ground that the costs taxed against the plaintiff in the former suit should be paid before he should be allowed to prosecute this one. This motion was also overruled.

The plaintiff recovered and the defendant appealed.

The defendant's contentions are: That the court committed error in overruling its said motion to dismiss for want of jurisdiction and to stay proceedings; in admitting incompetent, irrelevant and immaterial testimony; in refusing to direct a verdict in favor of defendant at the close of the plaintiff's case; and in giving and refusing certain instructions.

On the error assigned of failure of the court to dis-

miss for want of jurisdiction, the defendant seeks to have the decision of this court in Krueger v. Railway, 84 Mo. App. 358, overruled. The question therein was carefully and ably considered, in my opinion, by Judge Ellison, who delivered the opinion of the court, and the conclusion reached was sound. A single quotation from said opinion we think is conclusive of the question, viz.: "The defendant's taking a case to the Federal court by transfer, gives the Federal court no more jurisdiction than if he had been a plaintiff and had brought his action in that court. In other words, when a non-resident defendant causes the transfer of a case, brought by a resident plaintiff, to the Federal court, such plaintiff would have the same rights as a non-resident plaintiff would have who went into the Federal court in the first instance; that is, to dismiss and reinstitute the action in the State court."

It is admitted that in the matter of staying the proceedings in the case, the court was clothed with a power of exercising a sound discretion. It is contended that the court in overruling defendant's motion to stay plaintiff's case until he had paid the costs of the former suit upon the same cause of action, did not exercise a sound discretion. We think it did. It was shown that on account of his poverty he was allowed to sue as a poor person in the Federal court. Our statute provides that he may also sue in the State courts on account of his poverty and it would be a contradiction to deny his right to proceed with his case because he had failed to pay the costs in a case wherein he was allowed to sue as a poor person, and when it was reasonable to suppose, nothing to the contrary appearing, that his financial condition was unchanged.

The error complained of in the admission of testimony over defendant's objection must be disregarded. The objections were that the proposed evidence was irrelevant, incompetent and immaterial. It has been so often decided by the courts of the State that such objections can not be considered on appeal that we deem it useless to cite any authorities on the question.

The principal contention of defendant, however, is that the plaintiff was not entitled to recover on the pleadings and testimony. In the first place, it is claimed that plaintiff by his own negligence contributed to his injury. We quote from defendant's argument to show the reasons given to establish contributory negligence: "On the night he was hurt," says defendant's counsel, "he (plaintiff) had passed close to the vat when going to the thermometers; had been for several minutes in the room taking the temperatures of the brine and talking with the other men, long enough to observe the conditions there of the light or darkness and in other respects; and then he started with Klein and at his suggestion, to look at marks on a blackboard north of the vat; Fox then knew that he 'was going in the direction of the hot water vat;' he had a lighted lantern on his arm; and he did not look for the vat as he walked along. It would be difficult to imagine a case of more complete obliviousness to and disregard of a man's surroundings, —greater heedlessness and carelessness."

Let us see if, in view of all the facts, the plaintiff's conduct was such as to preclude him from recovery on the ground of contributory negligence. It was shown without dispute that it was the invariable habit of the defendant to have said vats covered when not in use; that they were not in use at the time of the injury; and that plaintiff did not know that they were uncovered. Such being the case, the plaintiff had the right to rely upon the custom of the defendant to have said vats closed, and his acts are not to be measured by the same rule that defendant seeks to apply to them if the vats had been in use and of necessity properly left uncovered. Plaintiff had been for more than a year in defendant's employ and up to the time of his injury he had never known the vats to be left open when not in use. When they were in use he was sufficiently warned of the danger, but under defendant's custom when they were not in use he was assured of safety from that cause. His negligence at most was a question to be left to the jury, which was done by appropriate instruction.

Under all the circumstances, would a person of ordinary prudence in the exercise of ordinary care have acted as the plaintiff did? was the proper test.

It is, however, claimed that if there was any negligence shown on the part of defendant's employees, it was the failure to cover the vat, which was the failure of his fellow-servants and not that of the defendant. It was shown that the means for covering the vats were on hand such as had been used on all former occasions. It was therefore a question whether the duty devolved on the master or the servants to have said vats covered. But were the laborers whose business it was to assist in the manufacture of ice, fellow-servants of the plaintiff whose business it was to keep watch over defendant's property at night and incidentally to register the condition of the brine used to manufacture ice? He had nothing whatever to do in common with the other laborers. His registering on the blackboard the temperature of the brine was not for the guidance of those engaged in the manufacture of ice, for they did their own registering, but it was in the nature of a report to Mr. Roberts, defendant's general manager. The question of what it takes to constitute a fellow-servant and a vice-principal was learnedly discussed by Judge MARSHALL in Grattis v. Railway, 153 Mo. 380, wherein he reviewed all the decisions of the Supreme Court of the State on the subject. We gather that it was there held that a vice-principal is a person who has the right to speak for the master, and that this is always a mixed question of law and fact. The mere fact that the plaintiff was engaged in a different department of the defendant's business from that of Gurry and his co-workmen, did not, under the rule in the Grattis case, supra, prevent him from being a fellow-servant.

We believe, however, under the facts, that Gurry was the defendant's vice-principal. There was evidence that a Mr. Johnson was foreman of the ice plant and had charge of the men during the day, and that Joseph Gurry had charge of the business at night. According to one witness, "he told them whatever work

he wanted done. He worked as any foreman would do at night. He instructed them what to do, the men who were the ice pullers.'' Mr. Johnson, general manager for defendant, testified that he was general manager of the ice plant at the time in question and looked after the business in the daytime, and further: ''We had a man there by the name of Gurry who had been there before the time the plant started and was a trusted employee, and we had him look after matters at night there; I don't know that he was ever dignified by the name of foreman; he did not have the right to discharge or hire anybody.'' If Gurry was in charge of the men at night and was invested with the power of directing them in their work and looking after defendant's business, whether he was called foreman or not he was vice-principal of the defendant; and it was his duty as such to have had said vats covered, as had been the custom. Because he did not have the right to employ and discharge laborers is not a conclusive test of the relation of master and servant. Glover v. K. C. Bolt & Nut Co., 153 Mo. 327; Grattis v. Railway, supra. It was a question of the authority of Gurry to represent defendant that was an issue in the case, and we think there was ample testimony from which it could have been held that he had the authority to direct the men engaged in operating the ice plant, in which case he was not the fellow-servant of the plaintiff.

While plaintiff's instructions numbers one and two are faulty in that they include the duty of the defendant to furnish and maintain reasonably safe appliances and premises, when there was no such issue before the jury, yet as the case turned upon the question of defendant's negligence in leaving the vats uncovered and the contributory negligence of the plaintiff, the jury could not have been misled thereby. The defendant asked sixteen instructions, nine of which were given, the fifteenth and sixteenth being modified and then given. The modification of the former was unimportant and that of the sixteenth made it all the stronger for defendant.

The questions of defendant's negligence and the plaintiff's contributory negligence, were submitted to the jury and their duty pointed out in the clearest terms. The question of whether Gurry was a fellow-servant of plaintiff was not submitted to the jury and arose in the case on the contention of the defendant that the verdict of the jury, under all the evidence, should have been for the defendant.

The plaintiff filed two motions in the case: one to dismiss the appeal, and the other to affirm the judgment of the lower court on the ground that defendant had not complied with the rules of the court in filing a proper abstract. These motions are overruled for the reason that the appellant has substantially complied with said rules.

There are some other questions raised by defendant as to the correctness of the rulings of the trial court, but they seem to us immaterial.

We think that the case in the main was well tried and that the judgment was for the right party; therefore, the same is affirmed. All concur.