SMITH, Respondent, v. THE AMERICAN CAR AND FOUNDRY COMPANY, Appellant.

St. Louis Court of Appeals, February 5, 1907.

1. **MASTER AND SERVANT: Vice-Principal: Fellow-Servant.** In determining whether one employee is the fellow-servant of another or a vice-principal of the employer, the solution of the question does not depend upon his rank, his power to hire and discharge employees or whether he occasionally worked with the men, but upon the authority he had over the workmen and their duty to obey his orders; in this case, an action for personal injuries, the evidence is examined and it is held the question as to whether the boss, whose negligence caused the injury complained of, was a vice-principal, was a mixed question of law and fact to be found by the jury upon proper instruction.

2. ———: ———: Negligence. In an action by an employee against his employer for damages on account of personal injuries received while passing by a car from which a plank was thrown by the order of the defendant's foreman and fell upon him, causing the injury, the evidence is examined and held to show that the foreman was guilty of negligence in causing the plank to be thrown when he could see it would strike the plaintiff.

3. ———: ———: ———. An employee whose duty it is to direct and control workmen under him is a vice-principal as to the work entrusted to him, and his negligence is the negligence of his employer so as to render the employer liable for an injury to another employee caused thereby.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*McKeighan & Watts, William R. Gentry* and *Edwin W. Lee* for appellant.

(1)  The court erred in overruling defendant's demurrer to the evidence for the following reasons: If the plaintiff was injured by the negligence of any one except himself, it was by the negligence of a fellow servant. Plaintiff was so associated with the gang of men who threw the board that he and they could report delinquencies to a common correcting power, and they were also working together at the same time and place toward the accomplishment of a common purpose for a common master. Where servants are so working together they are fellow-servants. Donnelly v. Cudahy Packing Co., 75 Pac. 1017; Spillane v. Eastman, 67 N. Y. Supp. 867; Somer v. Harrison, 8 Atl. 799; Ross v. Union Cement Co., 125 Ind. 463; Bier v. Railroad, 123 Ind. 78; Johnson v. Railroad, 104 Mo. App. 589; C. & A. v. Leach, 208 Ill. 216; Railroad v. Kneirin, 152 Ill. 466; Railroad v. Brooks, 115 Ill. 5; Gardner-Willmington Coal Co. v. Knott, 115 Ill. 515; Aurora Boiler Works v. Colligan, 115 Ill. 525; Relyea v. Railroad, 112 Mo. 86; Consumers' Cotton Oil Co. v. Jonte, 80 S. W. 847.    (2) The burden of proving that the relation of fellow-servants did not exist between plaintiff and the servant or servants who hurt him, rests upon the plaintiff. McGowan v. Railroad, 61 Mo. 528; Blessing v. Railroad, 77 Mo. 410; Sheehan v. Prosser, 55 Mo. App. 569; Shaw v. Bambrick-Bates Cons. Co., 102 Mo. App. 666.

*E. J. Geittman, W. P. Crites* and *J. Hugo Grimm* for respondent.

(1)  The injuries to plaintiff were the direct result of the negligence of Rohrbacker. Defendant claims that Rohrbacker and plaintiff were fellow-servants. Under the evidence and the decisions of the courts of last resort in this State, however, it is clear that in directing

the work and ordering the plank thrown into the path, Rohrbacker was acting as the representative or vice-principal of defendant, and not as a fellow-servant of the plaintiff. Bane v. Irwin, 172 Mo. 306; Miller v. Railroad, 109 Mo. 350; Gannon v. The Gas Co., 145 Mo. 502; Fox v. Dold Packing Co., 96 Mo. App. 173; Harper v. Railroad, 47 Mo. 580; Grattis v. Railroad, 153 Mo. 394; Hawk v. Lumber Co., 166 Mo. 121; Foster v. Railroad, 115 Mo. 179. (2) Under the evidence in this case the court very properly told the jury that if Rohrbacker had control of the work and directed when, where and how the men under him should work, that then he was not a fellow-servant of plaintiff. Fogarty v. St. Louis Transfer Company, 180 Mo. 514. (3) The court properly submitted to the jury the question whether plaintiff was injured through the negligence of defendant charged in the petition. Knapp v. Hanley, 108 Mo. App. 360; Rice v. Sally, 176 Mo. 132; Mosley v. Commission Company, 91 Mo. App. 500.

STATEMENT.—The action was to recover for personal injuries caused to plaintiff by a board falling upon him which was thrown from one of defendant's cars by its employees. The car was standing on a side track in defendant's yards, in the southern part of the city of St. Louis. The plank was from two and one-half to three inches thick, ten or twelve inches wide and thirty-six feet long, and weighed from five to seven hundred pounds. Plaintiff was on the ground and the plank was thrown over the side of a coal car. The resulting injuries were painful and permanent. Outside of its factory buildings and sheds, defendant maintains two side tracks running north and south. These tracks are laid so close together that a person cannot conveniently pass between them when cars are on both tracks. A fence seven or eight feet high runs parallel with the west track. Between this track and the fence is a footpath, frequently used by the employees of defendant.

Cars that are to be sent out from the factory are placed upon these side tracks and finished up and inspected. If the inspector condemns any part of a car it is made right while standing on the side track. One side of the coal car, from which the plank was thrown, had been condemned, and the workmen, who threw the plank, were engaged in taking it off. Plaintiff was employed by defendant at the time he was injured (June 27, 1905), had been in its employ 'for a considerable time, and was familiar with the work usually done on cars when placed on the side track. Scott was plaintiff's boss. On the day in question, plaintiff was engaged in keying up box bolts and clamp bolts in the shop and shipping-shed until about four or four-thirty p. m. when he went to hunt Scott, his boss, for instructions about work on other cars that were to go out, and had been set on one of the side tracks. When Scott was found he told plaintiff that four cars were to go out and for him to get some tools. After plaintiff got the tools, he discovered he would need some keys for the work to be done; to get the keys, he had to travel south on the footpath between the fence and the west side track, and pass the car from which the plank was thrown. Plaintiff got as many keys as he could carry in his hands and started back along the path to the cars on which he was to work, pressing the keys to his breast or side to keep them from falling, and looking straight ahead. As he was passing the coal car the plank was thrown over its side and fell upon him. Plaintiff testified he did not know any one was working on the car; that he neither saw nor heard any one about the car when he passed it going after the keys or as he returned with them. Plaintiff further testified that work was going on "pretty much all the time" on cars that had been placed on the side tracks, and the men on the inside of these cars were "liable" to throw something out and it was prudent to keep watch when passing them.

The petition is in the usual form.  It alleges that one Rohrbacher was defendant's foreman in charge of the men working inside the coal car, from which the plank was thrown, and that Rohrbacher, after having the plank loosened from the side of the car, "carelessly and negligently ordered them to throw the same from said car without first looking to see whether any of its other employees were passing by the car or were at work alongside of it, and that the said crew did, upon the direction of said foreman, throw the plank over the side of the car into the path adjoining the train of cars and along which plaintiff at the time happened to be walking in the discharge of his duties, so that the same struck him and knocked him down, thereby inflicting serious and permanent injuries."

The answer was a general denial and the following plea of contributory negligence:

"Further answering said amended petition, this defendant says that whatever injuries, if any, were sustained by the plaintiff on the occasion in question by and on account of the matters and things in said amended petition set forth, were caused by his own negligence directly contributing thereto in this, to-wit:  That on said occasion the plaintiff negligently and unnecessarily passed by the place where the work of tearing out the side of a car was being conducted, and negligently and carelessly failed to exercise ordinary care for his own safety, and negligently and carelessly failed to look and pay attention to his surroundings and to listen for warnings that were given, when by listening and lookig to observe his surroundings, he could, by the exercise of ordinary care, have discovered that said work was being done and could, by the exercise of ordinary care have escaped danger and injury to himself."

The verdict and judgment were for plaintiff in the sum of $1,999.

BLAND, P. J. (after stating the facts).—1. At the close of plaintiff's evidence, defendant offered an instruction for a compulsory nonsuit and contends that plaintiff failed to make out his case for two reasons: first, that his evidence fails to show that Rohrbacher was a vice-principal; and, second, that plaintiff's evidence shows affirmatively that Rohrbacher was not guilty of any negligence. In respect to whether or not Rohrbacher was a vice-principal, the evidence is that Hunter was foreman inside the sheds, where the sides and roofs of cars were put on, and at times worked a gang of men in the yards where plaintiff was hurt; that Rohrbacher was there frequently and was called "Hunter's straw boss" by the men; that the men would get work slips from Hunter and by his direction take them to Rohrbacher who, in a few minutes, would be out in the yards with a gang of men at work.

Alexander Ranahan testified that he was working on the car from which the plank was thrown; that the men were taken out there to work either by Hunter or Rohrbacher; that Rohrbacher took the workmen from this car to another one, and when the plank was loosened from the car, Rohrbacher stood on the footboard of the next car south and was there to see that the plank was taken out; that Rohrbacher was not working himself but told the men when to throw the plank over the side of the car; that Rohrbacher had charge of several men and often did work, such as handling planks and driving spikes.

William Hutt, who was working on the coal car, testified that Hunter was his foreman and ordered him to work on the car; that Hunter had some slips and said, "You go out there and see Rohrbacher, he has work for you to do;" that he went to Rohrbacher and was given a slip to go to work on the car; that three men took the plank off but it took six to throw it over the side

of the car, and Rohrbacher went for and got the three extra men.

The evidence is that Hunter was the superintendent of the department of defendant's work the workmen were engaged in, who threw the plank over, and it tends to show that Rohrbacher was recognized both by Hunter and the men as a sub or "straw boss" under Hunter; it also tends to show that Hunter directed Rohrbacher to take charge of and superintend the removal of the plank from the side of the car, and that the workmen reported to him and did the work under his supervision and direction. The question is, does this evidence show or tend to show Rohrbacher was a fellow-servant or a vice-principal in the performance of the work on the coal car? There is no ironclad rule by which to determine this question. Its solution does not depend upon Rohrbacher's rank, his power to hire and discharge employees, or the fact that he occasionally worked with the men, but upon the authority, if any, he had over the workmen and their duty to obey his orders and follow his directions; nor does it depend upon the fact that Hunter was the general superintendent over him. [Bane v. Irwin, 172 Mo. 1. c. 317, 72 S. W. 522, and cases cited; Foster v. Railway, 115 Mo. 1. c. 180, 21 S. W. 916; Miller v. Railway, 109 Mo. 350, 19 S. W. 58; Dixon v. Railway, 109 Mo. 1. c. 421, 19 S. W. 412; Haworth v. Railway, 94 Mo. App. 215, 68 S. W. 111.]

In Fox v. Dold Packing Co., 96 Mo. App. 173, 70 S. W. 164, a vice-principal is defined as "one who has the right to speak for the master." In Moore v. Railway, 85 Mo. 588, it is said: "He is a vice-principal who is entrusted by the master with the power to superintend, direct or control," etc. A section foreman, who is entrusted by the railroad company with power to superintend, direct and control the workmen, was held in McDermott v. Railway, 87 Mo. 285; Bowen v. Railway, 95 Mo. 1. c. 277, 8 S. W. 230, and Sullivan v. Railway, 107

Mo. l. c. 77, 17 S. W. 748, not to be a fellow-servant of such workmen.

In Stephens v. Lumber Co., 110 Mo. App. l. c. 405, 86 S. W. 481, JOHNSON, J., writing the opinion of the court, aptly said: "It is the character of the act itself that determines the relation of the actor to the injured servant. If it is one performed in the exercise of delegated authority it becomes the act of the master; and, on the other hand, if it arises from mere colabor it remains the act of a servant."

Other cases in accord with the foregoing might be cited from the reports of the appellate courts of this State. The foregoing, we think, are sufficient to show that the established doctrine in this State is, that whether an employee is a vice-principal is not determined by his comparative rank, or his authority to employ or discharge workmen, but is ascertained by determining whether or not he is entrusted by the master to superintend, direct or control, the employees in the performance of a particular work. Applying this doctrine to what the evidence tends to prove, we think Rohrbacher's relation to the defendant was a mixed question of law and fact to be found by the jury under proper instructions.

2. In respect to the second contention, that there is no evidence showing or tending to show that Rohrbacher was negligent, the evidence is that when the workmen were ready to throw the plank over, Rohrbacher went on the next car south and stood as close to the edge of the car as possible, to get a good view of the path; that he got a good view of the path, looked up and down it, and hallooed, "Lookout below," then, "All right," or "All right boys, let her go," whereupon the workmen threw the plank over the side of the car. The evidence shows there was nothing in the path to obstruct Rohrbacher's view and that one in his position could see it in either direction for several car lengths, but on account of the

height of the side of the car, the men on the inside did not have a fair view of the path, and several of them testified that they tried to see over the side of the car but saw no one. Plaintiff was found in an unconscious condition, with his head and half of his body thrust through the fence, and the plank across him. Evidently, he had been knocked down and forced through the fence by the force of the plank falling upon him, hence, it is conclusively shown that he was in a position to be struck by the plank, when Rohrbacher directed the workmen to throw it over the side of the car, and when he was in a position where he could have seen plaintiff in the path, and where, according to the evidence, he must have seen plaintiff. Rohrbacher did not testify. From the foregoing facts, it seems to us but one rational inference can be drawn, namely, that Rohrbacher saw plaintiff, thought the plank would not reach him and gave the order to throw it over. He took the risk of injuring plaintiff, and if he was a vice-principal, defendant is liable.

3. To the giving of the following instruction by the court, exceptions were saved and error is assigned:

"The court instructs the jury that if they find from the evidence that the board which struck plaintiff was thrown from said car at the direction of a person who was in the employ of defendant and who had charge and direction of the work of the crew in question, then such person was not a fellow-servant of the plaintiff but was the representative or vice-principal of the defendant, and his negligence, if you find he was negligent, was the negligence of the defendant, and if you find that his negligence in ordering the board to be thrown from the car caused the injury to plaintiff, then your verdict must be for the plaintiff; unless you believe that plaintiff was guilty of negligence which directly contributed to his injury."

This instruction is in accord with our views as set

forth in the first paragraph of this opinion. Defendant contends, however, that an instruction like this one was condemned by the Supreme Court in the case of Rains v. Railway, 71 Mo. 164. The instruction there given authorized the jury to treat the acts and negligence of one William Madge toward deceased as the acts and negligence of defendant, and to hold the defendant liable accordingly, provided they should find that said Madge, at the time of the accident, which occasioned this suit, "was acting for and in the employ of defendant in the yard at Belmont, and that his duties were to direct and control assistant brakemen in said yard in the employ of the defendant, and that the deceased was, at and prior to his death, one of such." The plaintiff's minor son was killed at the town of Belmont, on a side track of defendant's railroad, by coming in contact with a foot bridge extending from the upper story of an elevator across the side track to the upper story of a freight house on the opposite side of the track. The bridge was not high enough to permit a person of ordinary height to pass safely under it, while standing erect on top of box cars of a freight train. What, if anything, Madge had to do with the train is not shown, nor is it shown that Young Rains was on the train by his order, direction or consent. What is said in the opinion about the instruction is this: "We do not think the facts stated in instruction numbered 11, given for the plaintiff, constituted Madge a vice-principal of the defendant, and that instruction was, therefore, wrong. We have heretofore announced the law on this subject in McGowan v. St. L. & I. Mt. R. R. Co., 61 Mo. 528, and Marshall v. Schricker, 63 Mo. 308."

Under later decisions cited above, an employee, whose duty is to direct and control workmen under him, is held to be a vice-principal as to the work entrusted to him, and the instruction complained of embraced this idea in clear and unmistakable language and is approved.

Discovering no reversible error in the record, the judgment is affirmed.  All concur.