NORTHERN PAC. RY. CO. v. SCHOEFFLER.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

No. 2,039.

1. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—DUTY OF MASTER.

It is the duty of an employer to furnish his servant with a safe place to work and to keep it reasonably safe during the progress of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 180–184; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—DUTY OF MASTER.

The duty of an employer to furnish his servants with a safe place to work is not confined to the spot where the servant regularly or principally works, but extends to places where he has to go in the course of his work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—DELEGATION OF DUTY.

A servant has the right to look to his employer for the furnishing of a safe place to work, and if the latter, instead of discharging it himself, sees fit to delegate it to another servant, he does not thereby alter the measure of his own obligation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—SAFE PLACE TO WORK—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a car repairer in railroad shops caused by being struck by a car while it was crossing a track adjoining the one on

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which he was working, evidence examined, and *held* sufficient to go to the jury on the question of defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001–1050; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 208*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—SAFE PLACE FOR WORK.

A servant does not assume risks resulting from the master's failure to furnish a safe place to work, whether that duty was assumed by the master or delegated to another.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

6. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-LIGENCE—QUESTION FOR JURY.

In an action for injuries to a car repairer in railroad shops caused by being struck by a car while it was crossing a track adjoining the one on which he was working, evidence examined, and. *held* that the question of contributory negligence was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by Emil R. Schoeffler against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff in error at its shops in Tacoma had six tracks which were used exclusively for the purpose of repairing cars. The tracks all turned off from a track called the "house track." The switches for each track were provided with locks, the keys of which were carried by the foreman and the assistant foreman of the repair work. Tracks 1 and 2 were used for light repairs. The remaining four tracks were used for heavy repairs. Each afternoon the cars on one of the light repair tracks and on one of the heavy repair tracks would be "pulled," in the following manner: A crew in charge of a switch engine would come up on the house track and blow a whistle for the foreman of the repair tracks. He or his assistant would unlock the switch leading to the track which was to be pulled, but, before doing so, he would give notice to all workmen engaged in working on the cars on the track that the cars were to be pulled, so that they might get out of the way. When the switch was unlocked, the engine crew would come in and couple together the cars on the repair track, and pull them out onto the house track, and there the string of cars would be broken up by taking the cars which were fully repaired and placing them on the transfer track, then kicking back on the repair track such cars as needed further repairs. The engine crew would then pull the cars on one of the light repair tracks in the same manner. After kicking the cars back on the repair track, the engine crew would then go in with their engine and space the cars on that track, leaving them in groups of from two to four, with sufficient space between each group for the car repairers to work. The engine crew would then leave, and the foreman or his assistant would lock the switch, and no engine or cars could enter upon the track until the switch was again opened. The defendant in error began working as a car repairer on these tracks on ·October 3, 1908, and continued until he was injured on July 31, 1909. In the afternoon of that day he was working on track No. 5. About 5 o'clock he desired to use a jackscrew. There were from 50 to 100 men in the yards repairing cars, and there were only six or seven jackscrews. When the men were through with using the jack-

screws, they left them by the side of the track wherever they might be. The men were obliged continually to cross the tracks for the purpose of securing jackscrews. The defendant in error, remembering that a jackscrew had been left by the side of track No. 3, started to get it. To do so he had to cross track No. 4. There were then about 14 cars on that track, and they were separated or "spotted," as was the term in use. Nearest the switch there were two cars, then there was an open space of about 16 feet, then there were three cars, then an open space of 16 or 18 feet, then three cars again, and another open space, then some more cars. While crossing the last-mentioned open space on track No. 4, he was struck and injured by the moving of the cars. The evidence was that the men engaged in repairing knew it was safe to cross a track when it was spotted; that is to say, when they saw the cars separated in groups of twos and threes, with spaces between them. They knew that the cars were so grouped for the purpose of repair, and that the switch was locked, and would remain locked until the engine crew came on the track to couple the cars together and pull them out. The defendant in error, from where he was at work, and where he was when attempting to cross track No. 4, could not see the switch, nor the switch engine coming in. The cars had been in the same position since 12 o'clock, and the defendant in error and another witness testified that there had been no movement on the track since the morning. While the track was in this condition the foreman in charge of the repair track, who had control of the movement of cars on those tracks, had unlocked the switch, and cars were shunted in on track No. 4 without notice or warning to the defendant in error. The following rule was in force at the repair tracks: "All repair and shop tracks shall be locked with private locks by men in charge of the repair tracks or shops and no one shall be allowed to unlock switches except the men in charge of repair tracks or shops." There was dispute in the testimony as to whether or not it was customary to give any notice that a track was to be pulled or disturbed in any way. The defendant in error testified that there was such a custom. The jury found for the defendant in error on the ground of the negligence of the plaintiff in error in failing to furnish him a safe place in which to work.

Geo. T. Reid, J. W. Quick, and L. B. Da Ponte, for plaintiff in error.

Ray & Dennis, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVER- TON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The case is presented in this court on the assignment of error that the trial court denied the motion of the plaintiff in error for an instructed verdict. It is said that the motion should have been sustained on three grounds: That the plaintiff in error was not negligent; that the defendant in error assumed the risk of his employment; and that he was guilty of contributory negligence.

[1-3] It was the duty of the plaintiff in error to furnish the defendant in error a safe place in which to work, and to keep it reasonably safe during the progress of the work. That duty was not confined to the spot in which the defendant in error regularly or principally worked. It extended to places where he had to go in the course of his work, and that duty could not be delegated to another so as to relieve the plaintiff in error of liability for failure to perform

it. The defendant in error had the right to look to his employer for the discharge of that duty, and if the latter, instead of discharging it himself, saw fit to delegate it to another servant, he did not thereby alter the measure of his own obligation. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; New England Ry. Co. v. Conroy, 175 U. S. 326, 20 Sup. Ct. 85, 44 L. Ed. 181.

[4] If, as is indicated by the testimony of witnesses for the plaintiff in error, the employés on the repair tracks were obliged to cross those tracks daily in the course of their work without being able to see the switch engine, or to see whether the switch was locked, and they were given no warning of the approach of the engine and the consequent displacement of the "spotted" cars, the place was obviously and necessarily unsafe, and those facts furnish evidence of the negligence of the plaintiff in error. If, on the other hand, it was the custom in the yard to give notice that the cars on any of the tracks were to be pulled or moved, as is indicated by the testimony of the defendant in error, there was evidence of negligence in the fact that on the occasion when the injury occurred, no notice or warning was given.

[5] Nor did the defendant in error assume the risks resulting from a breach of the duty of the plaintiff in error to furnish him a safe place in which to work, whether that duty was assumed by the master, or was by him delegated to another. 1 Labatt on Master and Servant, § 270; Harvey v. Texas & Pac. Ry. Co., 166 Fed. 385, 92 C. C. A. 237; Hough v. Railway Co., 100 U. S. 213, 217, 25 L. Ed. 612. In the case last cited it was said:

"But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. Nor is it one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who is to use the instrumentalities provided by the master has ordinarily no connection with their purchase in the first instance, or with their preservation or maintenance in suitable condition after they have been supplied by the master." Hough v. Railway Co., 100 U. S. 213, 217 (25 L. Ed. 612).

[6] From the record it does not appear that the case is one which should have been taken from the jury on the ground of the proven contributory negligence of the defendant in error. It is argued that the sound of the bumping of the cars was sufficient to give the defendant in error warning of the danger, and we are referred to the testimony of the witness Haas who said that he heard the bumping, and to that of the witness Brockback, who said that he heard a crash. But it is not shown that those sounds were audible sufficiently long before the injury to give the defendant in error notice of the approach of the cars. At any rate, he testified that he did not hear them, and that he knew nothing of any movement of cars on the track until just as he was struck. The question of his contributory negligence under the circumstances was plainly one for the jury. Well v. Moran

Bros. Co., 55 Wash. 102, 104 Pac. 172; Smith v. Hewitt-Lea Lumber Co., 55 Wash. 357, 104 Pac. 651; Sturgeon v. Tacoma Eastern R. Co., 48 Wash. 366, 93 Pac. 526, 125 Am. St. Rep. 934.

We find no error.

The judgment is affirmed.