COCA–COLA CO. v. WILLIAMS et al.
(No. 36–2686.)

(Commission of Appeals of Texas, Section A. June 25, 1919.)

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

On motion for rehearing. Denied.

For original opinion, see 209 S. W. 396, which reverses 164 S. W. 1032.

SONFIELD, P. J. The majority recommend that the motion for rehearing be overruled; Judge TAYLOR dissenting; and accompanying this recommendation are his reasons therefor.

TAYLOR, J. I cannot concur in the recommendation of the majority of the court to overrule the defendant in error's motion for rehearing for the following reasons:

I am unable, upon further consideration, to distinguish this case in principle as involving the doctrine of "safe place" from the case of Hugo Schmeltzer & Co. v. Paiz, 104 Tex. 563, 141 S. W. 518. In that case the deceased was, in the employ of a wholesale grocery company, and on the occasion of his injury he, with other employés, were removing cases of snuff from the elevator in the defendant's building. Just prior to the accident, the wheels of a truck were caught and became fastened between the floor of the elevator and one of the floors of the building, thereby making impossible the ascent of the elevator until the truck wheels were moved. Charles Haermann, the defendant's vice principal, directed the deceased to remove the truck wheels from their wedged-in position, which he did. No sooner was the truck extricated than the elevator shot upward to the floor above, where the deceased, by being caught between that floor and the elevator platform, received the injuries which resulted in his death.

The court, after stating the facts, quotes the plaintiff's allegations to the effect that at the time of the accident the defendant owed the deceased, Louis Paiz, the duty to furnish him a reasonably safe place in which to work, and reasonably careful and experienced servants to assist him, and an experienced overseer to direct the work, and also to furnish him with reasonably safe appliances with which to work; that, notwithstanding the defendant was inexperienced in such work, the vice principal, acting for the master, directed said Paiz to go upon said elevator to release the same, which he did, by prying the wheels of the truck from between the said floors.

Judge Dibrell points out that, while other acts of negligence were alleged by the plaintiff, the two basic questions are: Was Haermann a vice principal, and, if so, was he negligent in doing something required to be done

by the master? He brushes aside as incidental the other acts of negligence, and predicates the defendant's liability solely upon the fact that the act of the vice principal in giving the instruction referred to resulted in a failure on the part of the defendant to furnish the deceased a safe place in which to work. The language of the opinion touching this conclusion is as follows:

"The contention that the elevator was a safe appliance for the use of defendant's servants, and that it had been recently inspected, is without any relevant force. That if it became disabled in the course of its use such defect was the result of the negligence of the fellow servants of deceased is also without any relevant force. Concede that the elevator was in good working condition and had been properly inspected, and that the cause of its descent when the loaded truck was rolled upon it was due to the fact the brakes were not properly applied, and that the negligent application of the brakes was due to the negligence of a fellow servant of deceased. By reason of the improper application of the brakes the elevator began to descend when the truck was rolled upon its platform, and when the elevator was reversed its ascent was arrested by the falling of the truck wheels between the floor of the elevator and building. Up to this time no injury had been done any servant of defendant. But when the deceased was directed to pull out the truck wheels from their wedged position, in order that the elevator might be used in the furtherance of the master's business, a different question arises involving defendant's liability for the death of deceased. * * *

"In directing the deceased to remove or assist in removing the truck wheels, he was so directed by defendant's vice principal, and therefore by the defendant itself, to perform a piece of work that was attendant with hazard and great danger, and, being directed and required to go upon the elevator platform in order to perform the required work, deceased was not furnished a safe place in which to work, an imperative duty imposed by law upon defendant. The neglect of such duty on the part of the defendant, out of which proceeded injury and death to the deceased, renders defendant liable to respond in damages."

In the case at bar the place where Gardner Williams was working was made unsafe by the act of the vice principal, Van Winkle, in applying the lighted match to the bung hole of the barrel containing the secret mixture, the combustible and inflammable nature of which the vice principal alone of those present knew. The vice principal (and therefore the defendant itself), instead of directing the deceased to strike and apply the match, did so himself. There is certainly no distinction in principle between a place made unsafe by an act of an employé performed under the direction of the vice principal present at the time of giving the order, and a place made unsafe by the vice principal himself in performing rather than ordering the act. The place where the deceased worked in this case was as safe, so far as the evidence shows, until the lighted match was applied to the barrel, as was the place in the Hugo Schmeltzer Case, where the deceased worked until the truck wheels were removed from their wedged-in position. If the act of the vice principal in ordering the wheels removed by the deceased in his presence in the other case rendered the place where Paiz worked unsafe (and Judge Dibrell unequivocally says it did), then the act of the vice principal himself in striking and applying the match in the other case rendered the place where Gardner Williams worked unsafe.

The very clear and forceful opinion of Presiding Judge SONFIELD, approved on original hearing by the Supreme Court, is persuasive that the doctrine of safe place should not apply in those cases involving injury resulting from the use or operation of the place, even though the detail of operation or use may be for the performance of a nondelegable duty. The distinction suggested has not been heretofore observed in any of the decisions of this state, while, on the other hand, the Courts of Civil Appeals in the cases of Hartshorn Bros. v. Williamson, 156 S. W. 264, and Houston Light & Power Co. v. Conley, 171 S. W. 561, recognize as applicable the safe place doctrine when the negligence complained of relates to transitory danger and detail operation. It is recognized by the Supreme Court in the Hugo Schmeltzer Case, in which the act causing the injury may properly be termed one of operation or one producing a transitory danger. La Batt, Master and Servant, § 1471, (542) also recognizes its applicability in the following language:

"The courts as a whole require the master to answer for the negligence of a vice principal whenever the default complained of consists in the omission to take such precautions as a prudent man would, under the circumstances, have taken for the purpose of protecting the injured subordinate against some peril of the transitory class, against which he had no adequate means of guarding himself.

"The duty to prevent the happening of the occurrence which would expose the servant to such a peril, or, if that is not possible, to give such warning as will enable him to remove his person out of the zone of danger in time to avoid injury, may well be regarded as a form of the nonassignable duty to furnish and maintain a safe place of work."

To the same effect is Bailey, Personal Injuries (2d Ed.) vol. 1, p. 240.

At common law a superintendent is for many purposes a fellow servant. Citation of authority from those states in which this dual capacity doctrine obtains and statements made in some of the cases may prove misleading, unless considered in the light of such doctrine. In Texas the vice principal is the alter ego of the master, regardless of what duty he is performing if it is within the scope of his authority, as is clearly recog-

nized in the Hugo Schmeltzer Case. Where the doctrine of dual capacity obtains, this same vice principal would not be regarded as a vice principal if, at the time of the injury caused by his act, he is performing a duty which could ordinarily be performed by a fellow servant, but would be regarded as a fellow servant; consequently, when in the performance of such an act, if the fellow servant act renders the master not liable, the safe place rule is without application. The negligence in such a case is not in a matter as to which the law imputes the vice principal's negligence to the master. Pelow v. Oswego Const. Co., 217 N. Y. 506, 112 N. E. 379; O'Brien v. Buffalo Furnace Co., 183 N. Y. 317, 76 N. E. 161; No. Pac. Ry. Co. v. Schoeffler, 193 Fed. 627, 113 C. C. A. 495.

The following Illinois case (the dual capacity doctrine is adhered to in that state) is cited as showing that when the vice principal in a matter, in which he is the alter ego of the master, does an act which makes a place unsafe, the master is liable. McNeill & Libby v. Scherman, 146 Ill. 540, 34 N. E. 801, 37 Am. St. Rep. 191.

The defendants in error have pointed out in their motion for rehearing more clearly than in their briefs the recognition by the courts of this state of the applicability of the safe place doctrine in cases of the master's negligence in operation, or in the performance of some detail of the business. For this, and the further reason that the Hugo Schmeltzer Case is not discussed in our original report to the Supreme Court, I have deemed it proper to include herein the foregoing statement with respect to "safe place."

2. The safe place charge which the defendant insists it was error to give is as follows:

"It was the duty of the defendant to exercise ordinary care to furnish the deceased, Gardner Williams, a reasonably safe place in which to do his work upon such occasion.

"By 'ordinary care,' as used in this charge, is meant such care as a person of ordinary prudence would exercise under the same or similar circumstances; and a failure, if any, to exercise such care, on the part of the defendant, is 'negligence,' as that term is hereinafter used.

"If you believe from the evidence that the defendant failed to exercise ordinary care to furnish Gardner Williams, the deceased, a reasonably safe place to perform his work upon such occasion, and that such failure, if any, proximately caused the injuries from which he died, then you will find for the plaintiffs, unless you find for the defendant under some other instruction given you."

Conceding that the submission of the foregoing charge was erroneous, was it prejudicially erroneous? The complaint in effect is that the court should have submitted, instead of the "safe place" charge, the question of whether the act of Van Winkle in striking and applying the match to the bung hole of the barrel constituted negligence. If the jury in finding for the plaintiff necessarily passed upon the negligence vel non of Van Winkle as to the act referred to, the defendant is in no wise injured. The charge and the evidence should be looked to in determining whether the jury, in finding the place unsafe under the charge, were compelled first to find whether Van Winkle was negligent in applying the match. If the master owes an absolute duty, whether a duty to furnish a safe place, or some other duty, and fails to use ordinary care to perform that duty, he is negligent. If such failure is traceable solely to an act of the master, and but one act, then that act is negligent. If there are no other acts of negligence before the jury that would lead them to speculate, there is no injury.

The plaintiff's allegation as to unsafety of place is as follows:

"Plaintiffs further show that the defendant was negligent, in that it failed to exercise ordinary care to furnish the said Gardner Williams a reasonably safe place to do his work, and that it caused, allowed, and permitted such lighted match to be brought about the said inflammable and combustible liquid or where the same was, and in that the acts of the said vice principal as herein set out while acting within the scope of his employment, and while doing an act of the defendant itself, made such place so that it was not reasonably safe for deceased to do his work."

Van Winkle testified as follows:

"The explosion was caused by my striking a match to look into the barrel to see how much liquid was in it. When I struck the match to shine the light into the barrel, it exploded like a barrel of gasoline."

The foregoing is the only evidence in the record of unsafety of place, unless the testimony of the presence of the barrels containing the mixture referred to can be so regarded. To regard it as such testimony is to recognize as applicable the safe place doctrine. It is uncontradicted that the accident happened as told in the foregoing statement of the vice principal. It is not contended that there was any other cause, or that it occurred in any other manner. There is neither pleading nor proof of any unsafe place, except the place at which the explosion occurred, or that this place was unsafe at any other time. Nor is there either pleading or proof that the place theretofore safe was unsafe except through the act of Van Winkle in applying the blaze to the bung hole of the barrel, thereby rendering it unsafe. As stated in our opinion on original hearing, the barrel of mixture was not in and of itself dangerous, nor was its presence or its use attended with danger unless in some manner brought in contact with fire.

The defendant admitted in open court that the injury received by Williams upon the occasion of the explosion resulted in his death. The jury, in finding for the plaintiff under

the charge complained of, found the place referred to was unsafe. The defendant did not request a charge limiting the question of the unsafety of place to a consideration of whether it was made unsafe by Van Winkle's act referred to. Under the terms of the charge quoted and under the charge presenting the same negatively, the jury necessarily found that the defendant failed to exercise such care in making the place unsafe as a person of ordinary prudence would exercise under the same or similar circumstances, and that the result of such failure was negligence; or, in other words, that the master was negligent. There is no evidence of the master's making the place unsafe except through the act of Van Winkle. As his act in applying the lighted match to the bung hole of the barrel is the only act before the jury as resulting in unsafety of place, the jury necessarily found that such act was negligence. Such negligence was the negligence of the master, and resulted in the death of Williams.

If there were evidence that the premises, or any part thereof, were unsafe, and such unsafety in no wise contributed to the death of the deceased, the question of harmless error would present a different aspect. The jury, under such circumstances, might speculate as to the defendant's liability for the deceased's death upon matters in no way contributing thereto. If the court by giving the charge complained of has caused the jury to go further and name the master's negligence "a failure to furnish a safe place," it has in no manner prejudiced the defendant in any of its rights.

The motion for rehearing calls attention for the first time to the following charge submitted by the court:

"If you believe from the evidence that the deceased, Gardner Williams, was injured by accident, you will find for the defendant. By 'accident' is meant such an unexpected catastrophe as occurs without any one being to blame for it—that is, without anybody being guilty of negligence in doing or permitting to be done, or omitting to do the particular thing that caused such casualty."

While the foregoing instruction is primarily upon the theory of accident, it directs the jury to say whether the explosion (there being no accident or catastrophe other than the explosion) resulted without Van Winkle being negligent in doing or permitting to be done the particular thing (there being no evidence of any one omitting to do anything, and the act of Van Winkle being the sole act) that caused the casualty. A verdict for plaintiff under this charge includes a finding of Van Winkle's negligence.

Under either the safe place charge or the charge under discussion, a verdict for the defendant would have included necessarily a finding by the jury that Van Winkle was not negligent, regardless of whether the court in a separate charge submitted the issue of his negligence vel non.

The record of the last trial of this case is brief. It is apparent, from the entire record of the case made in its meanderings to and from the appellate courts, that the question of greatest difficulty was presented in determining whether the defendant was liable under the death statute, and incidentally whether Van Winkle was the vice principal of the defendant. These matters being determined in accordance with the plaintiff's contentions, the case stands revealed in its simplicity, and as presenting one, and but one, issue, to wit, the negligence of the defendant through the act of its alter ego in applying the lighted match to the bung hole. The defendant requested no charge of any character bearing on the negligence of Van Winkle. The defendant offered no testimony. The plaintiff offered no testimony of unsafety of place, except as it was made unsafe by Van Winkle's act. The court instructed the jury that the defendant admitted that Gardner Williams' death resulted from the injuries received on the occasion of the explosion. The charge of the court in no particular imposed a greater burden on the defendant than the law imposes.

In view of the entire record, it occurs to me, the question of safe place is of but little moment. The issue is so simple, and the evidence bearing upon it so brief, that I am unable to see how the jury was misled as to the real issue, even in applying the evidence under the charge complained of. Dallas Con. St. Ry. Co. v. Chase, 103 Tex. 317, 126 S. W. 1109; Allen v. Clearman, 60 Tex. Civ. App. 589, 128 S. W. 1140; Decatur Cotton Seed Oil Co. v. Belew, 178 S. W. 607; T. & P. Ry. Co. v. Jowers, 110 S. W. 946 (writ denied); Dublin Cotton Oil Co. v. Jarrard, 40 S. W. 531; Wells Fargo & Co. v. Benjamin, 165 S. W. 120 (affirmed by Supreme Court, 107 Tex. 331, 179 S. W. 513); Fox v. Jacob Dold Packing Co., 96 Mo. App. 173, 70 S. W. 164.

The case last cited is directly in point, in that the issue of safe place was submitted to the jury by the trial court. The appellate court held that no such issue was presented. The issue of defendant's negligence vel non was submitted elsewhere in the charge, but the court held that the charge on safe place could not of itself mislead the jury. The court say:

"While plaintiff's instructions Nos. 1 and 2 are faulty, in that they include the duty of defendant to furnish and maintain reasonably safe appliances and premises, when there was no such issue before the jury, yet, as the case turned upon the question of defendant's negligence in leaving the vats uncovered and the contributory negligence of the plaintiff, the jury could not have been misled thereby."

I am of opinion that the giving of the safe place charge, even if erroneous, is not preju-

dicially so, either under the authorities dealing with harmless error in a general way, or under rule 62a, and recommend, therefore, that the judgment of the Court of Civil Appeals and that of the trial court be affirmed.

As the opinion on original hearing discusses neither the Hugo Schmeltzer Case, nor the question of harmless error, it is proper to state the view of the majority as to why in their opinion the motion for rehearing should be overruled.

With reference to the case of Hugo Schmeltzer v. Paiz, that while Judge Dibrell in his opinion makes mention of and discusses the safe place rule, the liability of defendant was predicated upon the negligence vel non of the vice principal, which was submitted by the trial court.

With reference to the charge of the court, that the error was not harmless; that, while it is true that unsafe place involves negligence, yet, where it is alleged that the place was unsafe in more than one particular, and the jury were not limited to the act of Van Winkle in striking the match, it cannot be said that the jury, in finding negligence in failure to furnish a safe place, based the finding upon the negligence of Van Winkle in so applying the lighted match; that the petition alleges the presence of the barrel containing the combustible matter in itself rendered the place unsafe, and the evidence showed the presence of the barrel; that it cannot be assumed the jury predicated its finding alone on the act of Van Winkle, but that same may have been based upon the presence of the barrel, which we hold under the evidence was not negligence.

That, further, plaintiffs having predicated their right of recovery upon the theory of negligence in failing to furnish a safe place, and the safe place doctrine not being involved, no recovery could be had herein for the negligence vel non of Van Winkle, the vice principal.